381 S.E.2d 382

**STATE of West Virginia**

v.

**Robert L. TINCHER.**

No. 18800.

Supreme Court of Appeals of West Virginia.

June 15, 1989.

Hugh Rogers, Kerens, for Tincher.

S. Clark Woodroe, Sp. Asst. Atty. Gen., Charleston, for State.

PER CURIAM:

This is an appeal by Robert L. Tincher from an order of the Circuit Court of Randolph County sentencing him as a recidivist to life in the penitentiary following a conviction of unarmed robbery. On appeal, the defendant principally claims that the trial court erred in admitting evidence of a photo show-up conducted by police officers preceding his indictment. After reviewing the record we agree, and we reverse the judgment of the Circuit Court of Randolph County.

At about 11:00 a.m. on November 7, 1985, two men approached the porch of Osie White, a eighty-two-year-old man, who lived in the hills below Harman, West Virginia. The two individuals indicated that they wanted to buy cars and that they were going into the junk business. Mr. White stated that he did not have cars to sell, and one of the individuals left.

A short time later, the second individual jumped on top of Mr. White and grabbed his wallet containing about $500. In the struggle that ensued, Mr. White tore a suede jacket off the attacker, and the attacker ran away.

State Trooper J.W. Reed investigated the incident and determined that on the day of the robbery the defendant had been wearing the suede jacket seized by Mr. White during the incident.

A short time later, Trooper Reed showed Mr. White seven photographs stapled to arrest cards. The defendant's photograph and arrest card were included. The card attached to the defendant's photograph indicated that he had been charged with the crime "Unarmed robbery; warrant date: November 7, 1985; date offense committed: November 7, 1985, 11:30 a.m.; where offense committed: Harman, Residence of Otis White." The information attached to the other photographs indicated that the individuals portrayed had committed other crimes, at other places, at other times.[1]

Mr. White easily identified the defendant's photograph as being the photograph of the individual who had robbed him the day before.

The defendant was subsequently indicted and tried for armed robbery.

During the defendant's trial, Trooper Reed described his investigation of the case and focused upon the photo identification session or show-up that he had conducted with Mr. White on the day following the robbery. He indicated that Mr. White had no trouble at all identifying the defendant's photograph as being that of the perpetrator of the crime.

Later during the trial, Mr. White was called as a witness. He was asked if he saw the perpetrator of the crime in the courtroom. He stated that he could not see well, and he looked carefully at several people. At length, he identified a member of the jury as the individual who attacked him.

In spite of the fact that Mr. White was unable to identify the defendant in the courtroom, the jury, at the conclusion of the trial, found the defendant guilty as charged. The defendant was later found to be a recidivist and sentenced to life in the penitentiary.

In the present proceeding the defendant claims that the trial court erred in allowing into evidence testimony relating to Mr. White's identification of the defendant's photograph during the photo show-up conducted by Trooper Reed.

■ In syllabus point 4 of *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), this Court set forth the test to be employed in determining whether evidence relating to a pretrial identification of the perpetrator of a crime should be admitted into evidence. The Court stated:

> A pretrial identification by photograph will be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

This rule was subsequently followed in *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986), and it is closely related to the decision of the Supreme Court of the United States in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

In the *Harless* case the Court indicated that impermissible suggestiveness can arise in two ways, from the nature of the photographs themselves and also from the way in which they are presented.

---

1. For instance, the card attached to William Watson's photograph indicated that he was charged with B. & E committed on November 7, 1977; "Wamsley Texaco." The card attached to Billy Murphy's photograph indicated that he was charged with committing "A & B" in Elkins on January 4, 1980. Emory Insenhart's card indicated that he had been charged with public intoxication; Keith White's card indicated driving under the influence.

In the case presently before the Court, the record clearly shows that arrest cards were attached to the photographs which were shown to the victim of the crime, Mr. Osie White. Mr. White had been robbed on November 7, 1985, at approximately 11:30 a.m. in the vicinity of Harman, West Virginia. The card attached to the defendant's photograph indicated that he had been charged with the unarmed robbery of "Otis" White at Harman on November 7, 1985, at 11:30 a.m. The cards attached to the other photographs involved in the photo show-up indicated that the individuals portrayed had been charged with such things as "B & E", "A & B", public intoxication, and driving under the influence. The cards indicated that the crimes had been committed on different dates and at different places from the crime against Mr. White. At the defendant's later trial, Mr. White was unable to identify the defendant as the individual who had robbed him, and, in fact, he pointed to a member of the jury as the perpetrator of the crime.

This Court believes that the information attached to the defendant's photograph distinctly set that photograph apart from the other photographs in the show-up and distinctly notified any viewer that the police suspected the defendant as being the perpetrator of the robbery against Mr. White. The photographs used in the show-up were inherently suggestive. Coupled with the failure of Mr. White to identify the defendant during trial, the Court believes that, in spite of the fact that Trooper Reed suggested that Mr. White did not read the information on the cards, there is a very substantial likelihood that the suggestiveness of the show-up gave rise to Mr. White's identification of the defendant as the perpetrator of the crime. Under the circumstances, *State v. Harless, supra,* indicates that the defendant's conviction must be reversed and this case must be remanded for a new trial.

Reversed and remanded.