388 S.E.2d 498

**STATE of West Virginia**

v.

**John SPENCE, Jr.**

**No. 18203.**

Supreme Court of Appeals of West Virginia.

Dec. 20, 1989.

---

P. Lee Clay, Baltimore, Md., Ron L. Tucker, Fairmont, for John Spence, Jr.

Brenda Craig Ellis, Asst. Atty. Gen., Charleston, for State of W.Va.

MILLER, Justice:

The defendant, John Spence, Jr., appeals his conviction by a jury of armed robbery in the Circuit Court of Marion County. He asserts three assignments of error: (1) that the photographic identification was tainted; (2) that the trial court gave a jury instruction on flight when no evidence of flight was introduced at trial; and (3) that the trial court committed reversible error when it refused to grant a continuance to permit the defendant's newly appointed attorney reasonable time to prepare for trial. After examining the record as a whole, we find no reversible error, and we affirm the conviction.

On August 18, 1985, a man robbed the 250 Drive Thru convenience store located in rural Marion County. As the name implies, the customer would drive to the store, and the clerk would come out and take the customer's order. It was also possible for the customer to shop inside the store premises. Grace Darla Smith, the clerk on duty the evening of the robbery, was nineteen years old. She testified at trial that shortly before midnight and just before the store was to close, a car drove up to the store. When Ms. Smith went out to take the order and observed a man getting out of the car, she turned and went back into the store. The man approached her from behind, held a large kitchen-type chopping knife to her back, and asked for the cash

register money. After Ms. Smith complied with his request, he ordered her to get down on the floor and left. Ms. Smith described the robber to the investigating officer as a white male with dark eyes, black hair, and a moustache and stated that he wore blue jeans, a black jacket, and a T-shirt and drove a blue automobile.

Approximately one and one-half hours later, Ms. Smith viewed a photographic array at the Mannington police department. A Marion County sheriff's deputy believed the victim's description of the perpetrator fit the defendant and the type of vehicle he was known to drive. The deputy selected photographs of men similar in appearance to the defendant for the photographic array. After picking out the defendant's photograph, Ms. Smith handwrote a statement which included language suggested by the deputy describing the composition of the photographic array.[1] This statement was admitted at trial.

Ten days later, a detective from the sheriff's department inserted the four photographs from the photographic array into a mug book for Ms. Smith to view. The victim again identified the defendant's photograph. The detective took a more detailed statement, in which Ms. Smith described the robber's automobile as red with a white roof. This statement was also introduced at trial.[2]

At trial, seven months after the crime, Ms. Smith was unable to identify the robber and could not remember many of the details surrounding the robbery or the police interviews. She testified that since the robbery she had suffered a great deal of emotional distress, had had difficulty eating and sleeping, and was afraid to stay at home by herself. She was also afraid to testify, although she had not been threatened by anyone.

---

1. The statement reads: "I 'Darla Smith' came to Mannington City Hall and look [sic] at 4 pictures and pick [sic] out John Spence. The only difference is he had shorter hair. A little cleaner shaving. The deputy showed me 4 pictures all white male's [sic] about the same age and hair style."

2. Ms. Smith described the robber in this statement as follows: "The guy started to get out of the car about this time, he was approx 6 foot tall, dark hair, blue eyes, moustache, he wore a black overall jacket—it looked something like a sailor's winter coat. He wore a T shirt under that and blue jeans."

On cross-examination, Ms. Smith also stated that on the night of the robbery she was in a state of shock, and it was possible that she could have picked out the wrong person. The evidence showed that shortly prior to trial the defendant had changed his hairstyle and had shaved off his moustache. The defendant's presence at the scene of the crime was established through the testimony of the investigating officer, who testified that the victim had picked the defendant's picture out of two separate photographic arrays.

The defendant's neighbor testified that the defendant and his family had not been seen at their residence from the night of the robbery until three months later when the defendant's wife removed their personal belongings. The defendant explained that he and his family had left the Mannington area after hearing on a CB radio that the police were going to his home. The defendant stated that the police had previously arrested him for a robbery he had not committed and that he did not want to be dragged into another case.[3]

In his son's defense, John Spence, Sr., testified that on the night of the robbery, the defendant had been at his house repairing a car. The defendant confirmed his father's testimony. The defendant was convicted of armed robbery and was subsequently sentenced to sixty years in the penitentiary.

## I.

The defendant claims that the victim's identification of him as the robber was not reliable because she did not have a sufficient opportunity to see the perpetrator. The defendant also asserts that the initial photographic array was suggestive and that the procedure was tainted because his name had been mentioned to her beforehand. Finally, the defendant points to the fact that at trial, the victim was unable to make a positive identification of the defendant. We first address the photographic identification issue.

## A.

■ In Syllabus Point 4 of *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), we adopted the test set forth in *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253, (1968), for determining whether pretrial photographic identification of the accused as the perpetrator of the crime should be admitted into evidence:

"A pretrial identification by photograph will be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

A photographic array may be impermissibly suggestive by its composition or by the manner in which it is carried out. We have found a photographic identification procedure suggestive where a witness indicated that the perpetrator had worn an "army green" jacket and hood and the defendant's photograph was the only one clearly depicting a person in a uniform with the phrase "U.S. Army" emblazoned on his shirt. *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986). We also found it impermissibly suggestive to use photographs with arrest cards attached, one of which identified the defendant as having been charged with the crime being investigated. *State v. Tincher*, 181 W.Va. 183, 381 S.E.2d 382 (1989).

On the other hand, we have refused to hold a photographic array unduly suggestive where one photograph depicted a man clearly older than the others, *State v. Stiff*, 177 W.Va. 241, 351 S.E.2d 428 (1986); where several photographs depicted men with beards not substantially different from the defendant's, *State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281 (1982); or where the defendant's photograph showed him in jail clothes, but without markings identifying them as such, *State v. Barker*, 168 W.Va. 1, 281 S.E.2d 142 (1981). As we explained in Syllabus Point 6 of *Harless*:

"Most courts have concluded that a photographic array will not be deemed

3. The defendant was also tried during this proceeding on charges that he had committed a 1984 robbery of a convenience store. He was found innocent.

excessively suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features. The fact that some of the photographs are dissimilar to the defendant's appearance will not taint the entire array."

In this case, the composition of the photographic array was not unduly suggestive. All of the photographs depicted white males of generally the same height. The defendant's appearance was not substantially different from that of the others. Accordingly, we find no error as to this assignment.

### B.

The defendant argues that there was evidence that the police assisted the victim in picking the defendant's photograph by giving her his name before she saw the array. One of the major concerns with identification testimony was explained in *United States v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149, 1158 (1967): "A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." [4]

The defendant claims that the procedure used here rendered the out-of-court identification unreliable under the totality of the circumstances test of *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). We adopted the *Biggers* test, which relates to the suppression of an in-court identification of the defendant because of an impermissibly suggestive out-of-court identification, in Syllabus Point 3 of *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976):

"In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*See also* Syllabus Point 1, *State v. Kennedy,* 162 W.Va. 244, 249 S.E.2d 188 (1978).

In both *Biggers* and *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court recognized that this test was applicable to control not only the admissibility of an in-court identification, but also testimony concerning the out-of-court identification. We recognized this point in *State v. Boyd,* 167 W.Va. 385, 395, 280 S.E.2d 669, 678 (1981), where we said "footnote nine of the majority opinion in *Manson v. Brathwaite,* 432 U.S. 98, 106–07, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140, 149 (1977), which clarified the application of the *Biggers* test, indicates that the same criteria should also apply in determining whether the out-of-court identification itself should be suppressed." We, therefore, modify Syllabus Point 3 of *Casdorph* and make its test applicable to out-of-court as well as in-court identification testimony:

"In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification [or testimony as to the out-of-court identification itself] a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was

---

**4.** *Wade* was one of a trilogy of cases issued on the same date by the United States Supreme Court. *Wade* and its companion case, *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), dealt which the Sixth Amendment right to counsel which the Supreme Court held attached at the time the defendant was subjected to a line-up. The third case, *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), established that the Due Process Clauses of the Fifth and Fourteenth Amendments applied to unnecessarily suggestive identification procedures.

suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

■ In this case, the victim admitted on cross-examination that before being shown the first photographic array, one of the officers had said that "[i]t probably could have been John Spence." She stated, however, that she did not know the defendant before the robbery and that no one suggested anything to her about the photographs. The police officers conducting the photographic array denied giving her the name of the defendant.

Even if it were clearly established that the defendant's name had been given to the victim before she saw the photographs, this information alone would not have tainted the array because the photographs contained no identification of the individuals pictured. Unless the victim knew the defendant before the array, her knowledge of his name would not have enabled her to pick out his photograph. Accordingly, we do not believe the photographic array was so tainted as to warrant suppression of the identification evidence.

### C.

■ Finally, we do not believe that the police officer's testimony regarding the two separate out-of-court photographic identifications made by the victim was objectionable as hearsay. The parties give this matter only cursory discussion on appeal. However, we spoke to this issue in

*State v. Carter,* 168 W.Va. 90, 282 S.E.2d 277 (1981), where both the victim and a police officer testified about the victim's out-of-court identification of the defendant.[5] In Syllabus Point 6 of *Carter,* we stated:

"Third party testimony regarding an out-of-court identification may in certain circumstances be admissible when the identifying witness testifies at trial because both the identifying witness and the third party are then available for cross-examination."

*See also State v. Boyd,* 167 W.Va. at 397–98, 280 S.E.2d at 679.

*Carter* was decided before our adoption of the Rules of Evidence. Rule 801(d)(1)(C), W.Va.R.Evid., appears to remove this type of testimony from the definition of hearsay.[6] *E.g., United States v. DiTommaso,* 817 F.2d 201 (2d Cir.1987); *United States v. Lewis,* 565 F.2d 1248 (2d Cir.1977), *cert. denied,* 435 U.S. 973, 98 S.Ct. 1618, 56 L.Ed.2d 66 (1978) (tracing history of rule); *United States v. O'Malley,* 796 F.2d 891 (7th Cir.1986). *See generally* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶¶ 801(d)(1)(C)[01] & [02] at 801–169 to 801–189 (1988). Even before this rule, courts were taking the view that in-court testimony about a prior out-of-court identification would be permissible because the out-of-court identification, which occurred much closer in time to the crime, would be more reliable. It was also recognized that in-court identifications may be less reliable because they are often made after suggestions of others and are coupled with the defendant's singular appearance at trial. *See generally* Annot., 29 A.L.R.4th 104 (1984); Annot., 71 A.L.R.2d 449 (1960).

---

**5.** Courts have recognized that out-of-court identification evidence may be offered for several purposes: (1) as substantive evidence to prove identification; (2) as corroborative evidence; and (3) as impeachment evidence. *Bedford v. State,* 293 Md. 172, 443 A.2d 78 (1982); *Commonwealth v. Swenson,* 368 Mass. 268, 331 N.E.2d 893 (1975). Here the out-of-court identification was offered as substantive evidence.

**6.** Our Rule 801(d)(1)(C), which is identical to its federal counterpart, states:

"*Statements Which Are Not Hearsay.*—
—A statement is not hearsay if—
"(1) Prior Statement by Witness.—The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (C) one of identification of a person made after perceiving him[.]"

These principles apply to pretrial identifications made by photographic array as well as to those made by personally viewing the defendant. *E.g., United States v. Fosher,* 568 F.2d 207 (1st Cir.1978); *United States v. Cueto,* 611 F.2d 1056 (5th Cir.1980); *United States v. King,* 590 F.2d 253 (8th Cir.1978), *cert. denied,* 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979). We indicated in Syllabus Point 6 of *Carter* that both the declarant, i.e., the person actually making the identification, and the third-party witness who testifies about the declarant's statements must testify—they are "then available for cross-examination."

This position is consistent with the view taken under Rule 801(d)(1)(C). *E.g., United States v. Jarrad,* 754 F.2d 1451 (9th Cir.), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985); *United States v. Elemy,* 656 F.2d 507 (9th Cir.1981); *United States v. Cueto, supra.* We, therefore, amend Syllabus Point 6 of *State v. Carter, supra,* to read as follows:

"[Under Rule 801(d)(1)(C) of the West Virginia Rules of Evidence,] [t]hird party testimony regarding an out-of-court identification may in certain circumstances be admissible when the identifying witness testifies at trial because both the identifying witness and the third party are then available for cross-examination."

Both the identifying witness and the third-party witness were subject to cross-examination in this case.

Finally, there is no claim of a violation of the Sixth Amendment right of confrontation because of the vagueness of the victim's identification testimony. This argument was made and rejected in *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), where the victim sustained an almost total memory loss after making the pretrial identification. We, therefore, find no error with regard to the admission of the identification testimony.

## II.

■ The defendant argues that the trial court committed reversible error in admitting evidence of flight without a bench conference or an *in camera* hearing and without issuing a curative or limiting instruction. The defendant seeks relief under Syllabus Point 6 of *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981), where we stated:

"In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect."

In this case, the defendant did not request an *in camera* hearing or a limiting instruction and did not object to the evidence of flight presented in the State's case-in-chief. Indeed, the defendant himself offered testimony as to flight on direct examination. The record shows that the defendant suddenly departed, along with his wife, on the evening the crime occurred when he heard the robbery being discussed by the police on his CB scanner. The trial court's instruction on flight was supported by evidence which would be clearly admissible under *Payne.* We, therefore, conclude that no reversible error occurred.

## III.

■ The defendant also assigns as error the trial court's failure to grant a continuance to enable a newly appointed co-counsel to better prepare for trial. The record shows that no motion for continuance was made until the day the trial was scheduled to start, February 25, 1986, when the defendant expressed displeasure with his court-appointed attorney. Defense counsel admitted that there had been some disagreement over the conduct of the case and suggested that the court consider appointing co-counsel and continuing the case to the next term or, in the alternative, replacing him with new counsel. A discussion followed concerning whether a continuance to the next term of court without the con-

sent of the defendant would violate the one-term rule.[7] W.Va.Code, 62–3–1. Because the defendant refused to agree to a continuance, the court moved the trial date back to March 4, 1986, and appointed co-counsel. No further motions for continuance were made. The attorney initially appointed to represent the defendant acted as lead counsel during trial and obtained an acquittal on one of the armed robbery charges. In these circumstances, we find no error in the refusal of the continuance.

## IV.

■ The defendant also assigns as error ineffective assistance of counsel. Our traditional standard is found in Syllabus Point 19 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974):

"In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error."

In *Marano v. Holland,* 179 W.Va. 156, 172, 366 S.E.2d 117, 133 (1988), we emphasized that in addition to a finding of inadequacy of counsel, there must also be a showing "that such inadequacy prejudiced his case,"

and concluded that "[m]uch the same standards are found in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).''

As evidence of ineffective assistance, the defendant points to the fact that no *in camera* hearing was requested by counsel on the issue of flight. As we have already concluded, the evidence of flight was clear. Even if the defendant had not testified, the State's evidence showed that the defendant had abandoned his rented house on the night of the crime. It is apparent that in order to secure the exculpatory testimony of the defendant and his father, the defendant's attorney had to concede the flight issue and attempt to minimize it with the defendant's testimony that the police were always trying to blame him for any criminal activity in the area. The failure to request an *in camera* hearing was obviously a matter of strategy or trial tactics.[8]

■ The defendant also claims that his attorney failed to use two witnesses that he had subpoenaed, i.e., Robert Hillberry and Theodore Jackson. The State also subpoenaed Mr. Hillberry, and his testimony was limited to whether he had sold the defendant the type of car used in the robbery. Defense counsel obtained on cross-examination whatever benefit he could have expected from Mr. Hillberry's direct testimony, namely, an admission that he was not sure what kind of car he had sold the defendant. Accordingly, the defendant suffered no prejudice from the failure to call Mr. Hillberry.

■ We are not advised by the defendant what Mr. Jackson's testimony would

---

7. Under *Good v. Handlan,* 176 W.Va. 145, 342 S.E.2d 111 (1986), once the defendant expressed a desire for new counsel, the court could have continued the case and appointed new or additional counsel without violating the one-term rule under W.Va.Code, 62–3–1. The defendant's motion would have constituted "good cause" for the continuance. *See also Pitsenbarger v. Nuzum,* 172 W.Va. 27, 303 S.E.2d 255 (1983). This is not to imply that the course taken by the trial judge was incorrect. The judge partially accommodated the defendant's request by supplying co-counsel. From the record, we are doubtful whether the defendant's disagreement with his counsel was so severe as to require replacement

of court-appointed counsel under *Watson v. Black,* 161 W.Va. 46, 239 S.E.2d 664 (1977). *See also State v. Bogard,* 173 W.Va. 118, 312 S.E.2d 782 (1984); *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983).

8. In Syllabus Point 21 of *State v. Thomas, supra,* we recognized the role of strategy and tactics: "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."

have been or how it was material to his case. Similarly, the record does not contain a copy of the indictment which would enable us to address the defendant's claims of a defective indictment and a fatal variance between the indictment and the proof. We have in the past stated that where assignments of error are asserted on appeal, but are not discussed, in the absence of plain error, we will decline to address them.[9] The plain error rule presupposes that the record is sufficiently developed to discern the error.[10]

■ The defendant also fails to direct us to any facts showing potential prejudice resulting from trial counsel's failure to obtain separate trials on the two robbery counts. A motion to sever the offenses in order to obtain separate trials is not automatic and rests within the sound discretion of the trial court, as we indicated in Syllabus Point 6 of *State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981):

> "The joinder of related offenses to meet possible variance in the evidence is not ordinarily subject to a severance motion. In those other situations where there has been either a joinder of separate offenses in the same indictment or the consolidation of separate indictments for the purpose of holding a single trial, the question of whether to grant a motion for severance rests in the sound discretion of the trial court."

We also discussed in *Mitter* that severance would be favored where the failure to sever would impair the defendant's ability to offer different defenses to each charge or limit his ability to testify as to one, but not all, of the offenses.

Here, the defendant offered the same defense and testified as to both robbery charges. He was acquitted of one of the offenses. Accordingly, we find no ineffectiveness of counsel as a result of the failure to request severance.

## V.

■ The defendant's final assertion is that the imposition of a sixty-year sentence for armed robbery was excessive and disproportionate to the crime in violation of Article III, Section 5 of the West Virginia Constitution and the Eighth Amendment to the United States Constitution. In *State v. Vance*, 164 W.Va. 216, 231, 262 S.E.2d 423, 432 (1980), we held that "a criminal sentence may be so long as to violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution." (Footnote omitted). In Syllabus Point 1 of *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984), we stated:

> " 'Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.' Syllabus Point 5, *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983)."

In *Buck*, we reviewed a seventy-five-year sentence imposed for aggravated robbery. The defendant and a codefendant had entered a store, struck the owner from be-

9. In Syllabus Point 4 of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), we stated:
   "Although it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution."

10. In Syllabus Point 4 of *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988), we stated our plain error rule:

"The plain error doctrine contained in Rule 30 and Rule 52(b) of the West Virginia Rules of Criminal Procedure is identical. It enables this Court to take notice of error, including instructional error occurring during the proceedings, even though such error was not brought to the attention of the trial court. However, the doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result."

hind, and robbed him. The trial court had based its sentencing decision on the defendant's juvenile record, the court's belief that the defendant's actions indicated an intent to kill the victim, and a negative presentence diagnostic evaluation. The record also showed, however, that at the time of sentencing the defendant was twenty-three years old, had no prior convictions as an adult, and had never been prosecuted for a crime of violence. In addition, the defendant had expressed remorse for what had happened and had offered to make restitution. We held that the fact the defendant had struck the victim could not be equated with an intention to murder and found the sentence disproportionate to the character and degree of the offense.

In *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983), we reversed a forty-five-year sentence for a robbery by violence. At the time of the offense, the defendant was nineteen years old, had only one prior arrest for public intoxication, and had not seriously or permanently injured the victim.

In *State v. Glover*, 177 W.Va. 650, 355 S.E.2d 631 (1987), we concluded that a seventy-five year sentence for aggravated robbery and malicious assault was not unconstitutionally disproportionate. The defendant had a felony record going back twenty years, had committed two previous malicious assaults, and had been convicted of arson and receiving stolen property. The presentence report recommended a maximum sentence because the defendant had been repeatedly violent and was dangerous to society and because the victim had nearly died from the assault.

The sentencing hearing record here reveals that the defendant has a prior conviction for armed robbery and had seventeen arrests and eleven convictions in the past eight and one-half years. A weapon was used in the commission of the crime, and the trial court was particularly concerned about the permanent emotional damage to the young victim. The defendant's ongoing violent conduct mirrors the behavior we found to be dangerous in *Glover*. Based

on this record, we conclude that the circuit court's sentence was not disproportionate.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.