# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Scotty E. Boothe,**
**Petitioner Below, Petitioner**

**FILED**

June 19, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No 13-0740** (Fayette County 11-C-246)

**David Ballard, Warden, Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Scotty E. Boothe, by counsel Lonnie C. Simmons and G. Todd Houck, appeals the June 19, 2013, order of the Circuit Court of Fayette County that denied his petition for post-conviction habeas corpus relief. The State of West Virginia in the name of David Ballard, Warden, by counsel Laura Young, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and the legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In his underlying criminal case, petitioner was convicted of sexually assaulting and sexually abusing a six-year-old boy, D.B., in 2007. Petitioner's crimes were discovered in May of 2008 when D.B.'s foster father saw D.B. on top of and behind his younger brother, making a humping motion. In response to his foster father's questioning about the incident, D.B. said that petitioner (1) had touched his penis, (2) had made D.B. touch petitioner's penis, and (3) had put a knife in D.B.'s "butt."

Thereafter, D.B gave a statement to police in which he said petitioner picked him up out of a chair in his grandmother's living room; carried him to the attic of a "clubhouse" located "over the hill" from the house; removed D.B's pants and underwear along with his own pants and underwear; touched D.B.'s penis and made D.B. touch petitioner's penis; placed a knife in D.B.'s rectum; and said he would injure D.B.'s parents or go to jail if D.B. told anyone about what petitioner had done. D.B. also told the police that "white stuff" came out of petitioner's penis when D.B. touched it; and that he knew petitioner because petitioner was D.B.'s grandmother's friend. In addition to this first statement, D.B. gave two subsequent statements to the police during which he added that petitioner had "humped" D.B.'s rectum with his "wiener."

During the investigation, a law enforcement officer presented D.B. with a photographic array that included petitioner's picture. D.B. pointed out petitioner as his assailant. The investigating officer also surveyed the crime scene, but found no physical evidence. D.B. was unable to provide a specific date for the crime. However, based upon the evidence, the

1

investigating officer determined that the crime occurred between January and September of 2007.

On September 9, 2008, petitioner was indicted on four counts: two counts of first degree sexual assault in violation of West Virginia Code § 61-8B-3 (penetration of D.B.'s rectum with petitioner's penis and with a knife) and two counts of first degree sexual abuse in violation of West Virginia Code § 61-8B-7(a)(3) (petitioner's touching of D.B.'s penis and petitioner's placement of D.B.'s hand on petitioner's penis).

Petitioner's family hired attorney Gina Tennen from the Liberty Law Group in California. Petitioner claims Ms. Tennen advertised herself as one of the "best criminal lawyers in the U.S." Petitioner's family also hired E. Lavoyd Morgan as local counsel. Petitioner claims he spoke with Ms. Tennen by phone four times before trial, but met her only once prior to trial. During that meeting, Ms. Tennen presented petitioner with a plea agreement that would have allowed him to enter a plea pursuant to *Kennedy v. Frazier*, 178 W.Va. 10, 357 S.E.2d 43 (1987),[1] to one count of third degree sexual abuse, with a resulting sentence of one to five years in prison, in exchange for the dismissal of all other counts in the indictment. Petitioner claims he rejected the plea because he was innocent of the crimes charged.

At some point, petitioner filed a notice of alibi for the time period of May 11-17, 2008, despite the fact that the crimes were alleged to have occurred between January and September of 2007.

Petitioner's trial took place on October 20-21, 2009. During jury selection, the judge instructed the jury that

> . . . the way or the manner that I rule on any of these matters must never ever be taken by any of you as any indication at all that I favor one side or the other in this case, because I do not.
>
> As presiding Judge throughout this trial and at all times I stand completely neutral, impartial, and indifferent as between the [State] and the defendant. . . .

The State called three witnesses during its case-in-chief: D.B.'s foster father, D.B., and the investigating officer. During Ms. Tennen's cross-examination of D.B., the circuit court interrupted or commented on Ms. Tennen's questions sixty-seven times in front of the jury. Many of the comments addressed the manner in which Ms. Tennen was attempting to impeach D.B.'s statements to the police. Other comments addressed the amount of time Ms. Tennen was taking in framing her numerous questions. One comment made reference to the fact that Ms. Tennen was from California. Petitioner contends that as a result of the circuit court's treatment of

---

[1] Pursuant to *Kennedy*, "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him." Syl. Pt. 1, *id.* at 10, 357 S.E.2d at 43.

2

Ms. Tennen, she asked local counsel, Mr. Morgan, to cross-examine the remaining State witness (the investigating officer) and to make the defense's closing argument.

During the defense's case-in-chief, petitioner's counsel called two witnesses. The first was an investigator who testified that the space in the clubhouse where D.B. claimed the assault occurred was very cramped and that petitioner would have had to crouch or stoop throughout the alleged assault. Thereafter, petitioner's doctor testified that crouching or stooping for extended periods of time would have aggravated petitioner's prior back injury and caused pain. Petitioner's counsel chose not to call three witnesses who were waiting outside the courtroom: Pediatrician Joan Phillips; Julie Heinig, an assistant laboratory director at DNA Diagnostic Center in Ohio; and Social Worker Sandra Culp.

The jury found petitioner guilty of one count of first degree sexual assault and two counts of first degree sexual abuse. Petitioner was acquitted on the count of first degree sexual assault that alleged he had placed a knife in D.B.'s rectum. By order entered December 9, 2009, petitioner was sentenced to not less than twenty-five nor more than one hundred years in prison for the one count of sexual assault, and not less than five nor more than twenty-five years in prison for each of the two counts of sexual abuse. The court ordered the three sentences to run consecutively for a net effective term of not less than thirty-five nor more than 150 years in prison.

This Court refused petitioner's direct appeal of his conviction on October 13, 2010.

On October 11, 2011, petitioner filed a petition for writ of habeas corpus. The circuit court held an omnibus hearing on the petition on February 12, 2013. Petitioner's witnesses at the omnibus hearing included, among others, Pediatrician Joan Phillips, Assistant Laboratory Director Julie Heinig, and local counsel, Mr. Morgan. Dr. Phillips testified that during her physical examination of D.B. she found no evidence of sexual abuse. However, she also opined that evidence of rectal penetration is discovered in only about five percent of cases. Julie Heinig, testified, that—in her expert opinion—a search of the crime scene might have yielded DNA or other evidence, despite the passage of time and "environmental insults." Mr. Morgan testified at the omnibus hearing regarding his role in the case. Petitioner also intended to call Social Worker Sandra Culp, but she was unable to attend petitioner's omnibus hearing. With the court's permission, Ms. Culp was deposed thereafter and the transcript of her deposition was made part of petitioner's habeas record. During her deposition, Ms. Culp testified that, at DHHR's request, she had interviewed D.B. for signs of trauma, but found no red flags suggesting trauma or sexual abuse/assault.

On June 19, 2013, the circuit court denied petitioner's habeas petition. It is from this order that petitioner now appeals.

This Court has previously stated that

"[i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion

3

standard; the underlying factual finding under a clearly erroneous standard; and questions of law are subject to *de novo* review."

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Petitioner raises three assignments of error on appeal. Petitioner first argues that the circuit court erred in concluding that petitioner failed to prove that he was denied his right to effective assistance of counsel. With regard to Ms. Tennen, petitioner claims that she was not prepared to try his case after he rejected the State's plea agreement; she met with petitioner face-to-face only once prior to trial; her cross-examination of D.B. was criticized by the court sixty-seven times; and she failed to timely notify the State about a report written by a forensic psychiatrist who claimed that petitioner did not fit the profile of a pedophile. Petitioner contends that as a result of this delay, the report could not be entered into evidence at trial. Petitioner also argues that Ms. Tennen's failure to present the testimony of Pediatrician Joan Phillips, Assistant Laboratory Director Julie Heinig, and Social Worker Sandra Culp during his case-in-chief proves that Ms. Tennen was ineffective given the exculpatory nature of their testimony at his omnibus hearing.

In regard to claims of ineffective assistance of counsel, we have said,

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

In addressing petitioner's claims of ineffective assistance of counsel, we first note that they relate only to Ms. Tennen, and not to Mr. Morgan, petitioner's local counsel. In fact, in his brief on appeal, petitioner paints Mr. Morgan as having no substantial role in this case. However, that claim is contrary to the record on appeal. At petitioner's omnibus hearing, Mr. Morgan testified that (1) he alone represented petitioner pretrial and successfully presented at least three motions on petitioner's behalf; (2) he was the lead negotiator regarding the State's plea offer and urged petitioner to accept the plea; (3) he had "several" sessions with Ms. Tennen pretrial; (4) he discussed with petitioner and Ms. Tennen whom to call as defense witnesses at trial; (5) he effectively cross-examined the investigating officer at trial; (6) he was instrumental in petitioner's acquittal on one count of sexual assault thereby reducing petitioner's potential maximum prison sentence by twenty-five to one hundred years; and (7) he was paid $10,000 by Ms. Tennen for his contribution to petitioner's case.

As for petitioner's claims regarding Ms. Tennen, during petitioner's omnibus hearing, the prosecutor assigned to try the case testified as follows: (1) she had several discussions with Ms. Tennen about the case in the month before trial; (2) she did not notice any difference in the manner in which the judge treated the State and the defense; (3) she did not agree with

4

petitioner's habeas counsel's claim that Ms. Tennen's work was "very poor" because Ms. Tennen effectively highlighted the inconsistencies in D.B.'s three statements to the police and got D.B to admit that he did not bleed or cry out in pain when petitioner allegedly inserted a knife into D.B.'s rectum; and (4) the trial court expressed frustration with and interrupted both the State's direct examination of D.B. and Ms. Tennen's cross-examination of D.B.

In its order denying habeas relief, the circuit court found that Ms. Tennen's cross-examination of D.B. was not ineffective. The court also found that its requests that Ms. Tennen not waste time and adhere to court rules did not prejudice petitioner's case particularly given the trial court instruction during jury selection that "[a]s presiding judge . . . I stand completely neutral, impartial, and indifferent as between the [State] and the defendant. . . ."

As for Ms. Tennen's strategic decision not to call various defense witnesses at trial, the circuit court found that this decision did not change the outcome of petitioner's trial for the following reasons. First, Dr. Phillips's testimony may have harmed petitioner given that she testified at petitioner's omnibus hearing that the vast majority of children who are rectally penetrated do not manifest physical trauma. Second, with regard to Ms. Heinig, the circuit court noted that she never visited the crime scene in this case, nor did she perform any tests showing that DNA was present there or, if present, was still capable of testing. Third, in regard to Social Worker Culp, the circuit court found that the absence of her testimony at trial did not likely change the outcome given that, during her deposition, she testified that not all sexually abused children exhibit signs of trauma. Finally, regarding petitioner's claim that Ms. Tennen's failed to timely notify the State about the forensic psychologist's report (which claimed that petitioner did not fit the profile of a pedophile), the circuit court found that the report would not have been admissible because evidence regarding "tendencies" was not compelling evidence that petitioner did not assault D.B.

"Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his [or her] conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). That said,

> a criminal defense attorney might be ineffective if he or she failed to present advantageous evidence that could affect a jury's verdict. [But our] cases also demonstrate that where the failure to call a witness is not due to dereliction on the part of counsel, there is no ineffective assistance. *See generally State v. Spence*, 182 W.Va. 472, 388 S.E.2d 498 (1989); *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982).

*State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 328-29, 465 S.E.2d 416, 430-31 (1995).

The record on appeal in this case shows that both Ms. Tennen and Mr. Morgan made strategic decisions on petitioner's behalf that were assistive of his interests. Those decisions included not calling the three witnesses of whom petitioner complains. Given that petitioner failed to prove that Ms. Tennen's acts were outside the broad range of competent assistance or

5

that any errors she may have made affected the outcome of his trial, and given that he does not argue that Mr. Morgan's significant work on his case was ineffective, we find that the circuit court did not err in denying petitioner's claim that he received ineffective assistance of counsel.

Petitioner next argues that the circuit court violated his constitutional rights to an impartial jury and to confront witnesses against him when it interrupted Ms. Tennen sixty-seven times during her cross-examination of D.B. Petitioner claims that the circuit court's interruptions likely lead the jury to believe that the circuit court was criticizing Ms. Tennen. Petitioner also contends the court's repeated statements that "that's not how we do it here" and its comment that Ms. Tennen was from California, likely made the jury view Ms. Tennen as an outsider. Finally, petitioner claims that jurors tend to identify with a judge and, therefore, a judge must not express partiality for or against one side.

We have said that

> "[t]he extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice." Syl. pt. 4, *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502 (1956).

*State v. Wood*, 167 W.Va. 700, 280 S.E.2d 309, 310 (1981). The record on appeal in this case shows that the trial judge properly rebuked both sides when it believed they were stepping outside the boundaries of the law. However, the circuit judge also specifically instructed the jury that he was absolutely impartial and nothing he did or said should be taken as partiality. Further, the trial judge did not prevent defense counsel from asking any questions on cross-examination, it merely asked that Ms. Tennen comply with the laws of this State and not unnecessarily tarry when cross-examining a young child. Importantly, the record also shows that the trial court interrupted the prosecutor and placed the same requirements on her as it did on Ms. Tennen. Further, the fact that the jury acquitted petitioner of one count of sexual assault indicates that the trial court's comments did not adversely affect the jury or prejudice it against Ms. Tennen or petitioner. Based on this record, we cannot say that the circuit court erred in finding that the trial court did not violate petitioner's constitutional rights to an impartial jury or to confront witnesses against him.

Petitioner last argues that the circuit court erred in concluding that petitioner's constitutional right to assert an alibi defense (that he could not have assaulted D.B. during a particular week in May of 2008) was not violated. Petitioner argues that when the trial court denied his alibi instruction, it denied his constitutional right to present a defense. We have said,

> a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right to . . . offer testimony in support of his or her defense . . . which [is] essential for a fair trial pursuant to the due process clause found in the Fourteenth Amendment of the *Constitution of the United States* and article III, § 14 of the *West Virginia Constitution*.

6

Syllabus Point 3, in part, *State v. Jenkins*, 195 W.Va. 620, 621-22, 466 S.E.2d 471, 472-73 (1995); s*ee also Chambers v. Mississippi*, 410 U.S. 284 (1973). However, we have also required that "[a] trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. . . ." Syl. Pt. 4, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Petitioner was indicted for acts occurring between January and August of 2007. Yet petitioner offered a notice of alibi for a particular week in May of 2008. Further, petitioner entered no evidence at trial or at his omnibus hearing showing that because he did not assault and/or abuse D.B. during May of 2008, he could not have assaulted D.B. between January and August of 2007. Therefore, we concur with the habeas court's finding that the trial court did not err in denying petitioner's alibi instruction because petitioner failed to enter any evidence in support of it.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  June 19, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

7