# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 17-1096** (Nicholas County 11-F-27)

**Daniel J. Tabor,**
**Defendant Below, Petitioner**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Daniel J. Tabor, by counsel George Castelle, appeals the Circuit Court of Nicholas County's November 15, 2017, sentencing order following his conviction for attempted voluntary manslaughter. Respondent the State of West Virginia, by counsel Caleb E. Ellis, filed its response in support of the circuit court's order to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 23, 2009, petitioner and his wife, Mary Tabor, visited with Timothy Belcher in Mr. Belcher's home in Craigsville, West Virginia, before the three went into town. After spending time in Craigsville where the men drank in a bar, they proceeded back to Mr. Belcher's home. However, during that trip, petitioner and Mr. Belcher began arguing and petitioner told Mr. Belcher he was going to kill him. Upon reaching Mr. Belcher's home, the men had a confrontation outside of the car, during which petitioner struck Mr. Belcher on the head, causing him to fall to his knees. Petitioner then stabbed Mr. Belcher in the back with a knife, pulled Mr. Belcher's head back, and slashed Mr. Belcher's throat with the knife.[1] Petitioner got back into the vehicle, and he and his wife left the scene. Mr. Belcher went into his home and called 9-1-1.

A Nicholas County grand jury indicted petitioner with attempted murder, in violation of West Virginia Code § 61-11-8. While a warrant was issued on those charges in 2009, petitioner was not located and arrested until May of 2015. Based on the fact that petitioner lived out of state and moved several times between 2009 and 2015, the State filed an amended answer to petitioner's omnibus discovery motion, notifying petitioner of its intent to introduce evidence of flight. On the morning of trial, after jury selection, the circuit court told the attorneys "there can't

---

[1] There was conflicting testimony about who originally possessed the knife that evening.

1

be evidence of flight unless we have an in camera hearing and [it made] a determination about whether the flight is evidence of guilt or not, and we haven't had that. . . ." When the circuit court asked petitioner's trial counsel his position on that matter, counsel stated that he

> told the jury it's clear that [petitioner] that he left and left the state, and he left the state because he didn't want to get arrested . . . so, although generally, we – we don't like flight evidence, with the cautionary instruction, I think that, you know, the evidence was he left because he didn't want to get captured.

The circuit court then asked to bring petitioner out to "make sure he agrees with that." Petitioner then agreed that he could not dispute leaving the state because he did not want to be arrested.

Shortly after voir dire was completed, the circuit court dismissed the jurors and took a break. During that break, while petitioner was not present in the courtroom, the circuit court and counsel for both parties discussed the fact that one of the selected jurors expressed concern due to a previously planned vacation scheduled to begin the following day. Because the juror failed to disclose that trip during selection, the remaining prospective jurors had been released, and no alternate had been selected due to the expectation that the trial would last only one to two days. After a conversation on the record, the court informed the juror that they would try to conclude the trial that day. According to the transcript, both attorneys indicated their agreement with that plan. After the juror left the courtroom, the circuit court told the attorneys "[t]hat means cutting it short. I mean, go as fast as we can . . . short breaks and go late." Again, the attorneys appeared to be in agreement, and no one voiced any objection. The trial was completed in a single day.

At the conclusion of the trial, the circuit court presented the jury with four possible verdicts: attempted first degree murder, attempted second degree murder, attempted voluntary manslaughter, and not guilty. The jury reached a verdict less than two hours after deliberations began, finding petitioner guilty of attempted voluntary manslaughter. On December 11, 2015, the State filed a recidivist information, pursuant to West Virginia Code § 61-11-19, alleging that petitioner had been convicted of breaking and entering in 1992. On December 29, 2015, petitioner appeared for an arraignment on the State's recidivist information and admitted that he was the same person listed. He was then sentenced to an indeterminate term of not less than two nor more than three years in the state penitentiary. He was resentenced for purposes of appeal by order entered April 25, 2017, and again in November of 2017. It is from the final sentencing order that petitioner appeals.

On appeal, petitioner sets forth a single assignment of error: the circuit court erroneously violated petitioner's constitutional and statutory right to be present at all critical stages of the proceeding against him when the court, out of the presence of petitioner, (1) conducted a colloquy with a juror and, against petitioner's interest, reached an agreement with the prosecution and defense to rush the trial to completion in a single day and (2) obtained a waiver of petitioner's right to an admissibility hearing on highly prejudicial evidence of flight. Petitioner asserts that both violations of the right to be present constitute plain error. He argues that the communications outside of his presence are not harmless error because he was deprived of the opportunity to learn of three critical matters: the significance of the required admissibility hearing; the need to rush the proceeding; and that with neither a request by the State in pretrial

2

proceedings nor sufficient time for a hearing on the day of trial, the circuit court was prepared to rule that evidence of flight was inadmissible. We agree with petitioner that he "has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless." Syl. Pt. 6, in part, *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977). "A critical stage of a criminal proceeding is where the defendant's right to a fair trial will be affected." Syl. Pt. 2, *State v. Tiller,* 168 W. Va. 522, 285 S.E.2d 371 (1981).

Because petitioner's trial counsel did not object below, his counsel relies upon a plain error analysis. This Court has long held that the "'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made." *State v. Miller*, 194 W. Va. 3, 18, 459 S.E.2d 114, 129 (1995). "To trigger the application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id*. at syl. pt. 7. We have further noted that the plain error rule should only be exercised to avoid a miscarriage of justice and reserved for correction of those few errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15 (1985).

Petitioner asserts that the discussion with the juror, outside of his presence, was a hearing involving a "substantial matter of law" and the "testimony of witnesses." However, he simply asserts that the error was not harmless because upon "a review of the full colloquy outside the presence of [p]etitioner[,] . . . [p]etitioner was deprived of the opportunity to learn of . . . critical matters: . . . [including] the need to rush the proceeding . . . ." Petitioner does not really address the juror issue until his reply brief, leaving the State without an opportunity to respond to such arguments. There, he asserts that even if the agreement to rush the trial primarily involved taking short breaks, the same meant less time for petitioner to consult with his trial counsel, less time to discuss the examination and cross-examination of witnesses, and less time to prepare his own testimony. Petitioner then contends that if he had "been present during the discussion with the juror, he would have learned of the agreement to rush the trial, an agreement that he *may have* opposed had he been given the opportunity." (Emphasis added).

We have expressed concern regarding the practice of judges or court officers communicating with a jury. *See State v. Allen*, 193 W. Va. 172, 455 S.E.2d 541 (1994) and *State v. Smith*, 156 W. Va. 385, 390, 193 S.E.2d 550, 554 (1972). However, as this Court stated in *State v. Shabazz*, 206 W. Va. 555, 557, 526 S.E.2d 521, 523 (1999),

> [t]he right to be present is not a right to be present at every moment, but a right to be present at all "critical stages" in a criminal proceeding. We have not held that communication by a judge or other court officer with a jury is always a critical stage for the purpose of requiring the defendant's presence.

In addition, we noted in *Shabazz* that "[a]lthough even incidental contact and communication between a [judge] and a deliberating juror should be avoided, it is not error if the same is solely related to administrative matters such as meals, transportation, or if a juror contacts the [judge]

3

concerning a family emergency." *State v. Shabazz*, 206 W. Va. at 558, n.5, 526 S.E.2d at 524, n.5. In the instant matter, the juror had just been empaneled and was even further removed from deliberations. Upon learning of the issue and bringing the juror in, with counsel present, the circuit court informed the juror that she may need to join the rest of her party on vacation a day late and that they would just do the best they could. While the circuit court indicated to counsel that the breaks may need to be shortened, petitioner does not point to any time that he desired or requested additional time to confer with his counsel and does not assert that any request to do so was denied. Based on the record before this Court, we find that the alleged error did not rise to the level of a plain error, particularly in light of the substance of the communication with the juror.

With regard to the admissibility of evidence of flight, petitioner argues that a hearing was required prior to the admission of such evidence but that the State failed to request the necessary hearing. Petitioner contends that the waiver of such hearing is a critical stage requiring his presence. He further asserts that the waiver of the admissibility hearing in petitioner's absence was not harmless error and was not knowingly and intelligently done.

> "In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect." Syl. pt. 6, *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981).

Syl. Pt. 3, *State v. Meade*, 196 W. Va. 551, 474 S.E.2d 481 (1996).

During voir dire, petitioner's trial counsel informed the prospective jurors that they would "hear testimony that [petitioner] left the state and was gone for a period of time, and that the law enforcement was looking for him – fugitive warrants, and they were looking for him." He then inquired whether any of the prospective jurors remembered "seeing anything regarding a fugitive wanted by law enforcement or anything like that?" Counsel went on to ask

> if you hear testimony, and you will, that he was gone for a period of time and they were looking for him, do any of you believe that that fact alone is going to prevent you from being fair in determining whether the State's able to prove his guilt beyond a reasonable doubt of the attempted murder of Mr. Belcher?

No potential jurors responded in the affirmative to either of those questions. Only after voir dire had ended and a jury had been empaneled did the issue of evidence of flight arise. The circuit court raised the issue and said that it was unsure that evidence of flight could be introduced without an in camera hearing. In response, petitioner's trial counsel responded that the law requires that one of the parties request such hearing but that neither party had requested it. Counsel for the State stated that she had given notice of the intent to introduce such evidence during discovery and that petitioner had not filed a motion in limine regarding that evidence. When discussing the admission of that evidence, petitioner's trial counsel admitted that he had told the jury "he left the state because he didn't want to get arrested . . . ."

4

In addressing a similar situation involving the admission of flight evidence, we found as follows:

> In this case, the defendant did not request an *in camera* hearing or a limiting instruction and did not object to the evidence of flight presented in the State's case-in-chief. Indeed, the defendant himself offered testimony as to flight on direct examination. The record shows that the defendant suddenly departed, along with his wife, on the evening the crime occurred when he heard the robbery being discussed by the police on his CB scanner. The trial court's instruction on flight was supported by evidence which would be clearly admissible under *Payne.* We, therefore, conclude that no reversible error occurred.

*State v. Spence*, 182 W. Va. 472, 479, 388 S.E.2d 498, 505 (1989). Similarly, petitioner does not contest the fact that the State put him on notice of its intent to use evidence of flight during its case in chief. He does not point to any evidence in the record that shows that he objected at any point to the admission of such evidence. In fact, to the contrary, the record shows that his trial counsel was the one who raised the issue of flight before any evidence was introduced. Under the specific facts of this case, we find that the circuit court did not err in allowing the introduction of evidence of flight despite the lack of a formal in camera hearing and the fact that his trial counsel waived the right to such hearing without petitioner's physical presence at the time of his initial agreement. In addition, based on the facts before us, including trial counsel's discussion of the evidence of flight before the circuit court had determined whether the same was admissible, we find that this was not a critical stage of the proceedings.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

5