565 S.E.2d 368

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Lance Anthony TYLER, Defendant Below, Appellant.**

No. 29759.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2002.

Decided March 15, 2002.

Dissenting Opinion of Justice Albright June 11, 2002.

Concurring Opinion of Justice Maynard July 2, 2002.

Darrell V. McGraw, Jr., Attorney General, Heather D. Foster, Assistant Attorney General, Charleston, for the Appellee.

D. Randall Clarke, Charleston, for the Appellant.

**PER CURIAM.**

This is an appeal from a final order of the Circuit Court of Kanawha County sentencing Mr. Lance Anthony Tyler (hereinafter "Appellant") to a term of thirty years for aggravated robbery. The Appellant contends that the sentence is unconstitutionally excessive and disproportionate to the character and degree of the offense committed. Having thoroughly reviewed the record, briefs, and arguments of counsel, we affirm the Appellant's sentence.

### I. Facts and Procedural History

On August 17, 1998, two seventeen-year-old females were approached by two males as the females walked from the Town Center Mall in Charleston, West Virginia, to their vehicle parked in the mall parking garage. The Appellant and an unidentified accomplice approached the females and began speaking to them in an unoffensive manner. As the men followed the females, they walked closer, revealed a small automatic handgun,[1] and demanded money. One of the victims was forced to her hands and knees on the ground. The Appellant and his accomplice obtained money from the victims and then began to run away. They immediately returned, took the victims' car keys, and departed a second time.

The Charleston Police Department received two anonymous phone calls on August 18, 1998, in which one caller identified herself to police as a relative of the Appellant. The victims identified the Appellant in a photo array, a warrant was issued for the Appellant's arrest, and he turned himself in to the police on August 26, 1998. The Appellant refused to provide information regarding the identity of the accomplice, and the gun used in the robbery has not been recovered.

The Appellant was indicted for two counts of aggravated robbery in the September 1998 term, upon the information of Detective J.A. Rollins of the Charleston Police Department.

---

1. One victim identified the Appellant as the assailant holding the gun; the other victim recalled that the accomplice held the gun.

The Appellant was thereafter arraigned before the lower court on November 19, 1998.[2]

The State offered a plea agreement to the Appellant, in which the Appellant would be permitted to plead guilty to only one count of aggravated robbery, rather than the two counts in the indictment. As part of the plea agreement, the State would recommend that the Appellant be sentenced to fifteen years incarceration. The Appellant accepted the plea agreement offer on April 19, 1999, and entered a plea of guilty to one count of aggravated robbery with the use of a firearm. The lower court accepted the Appellant's plea of guilty and denied post-conviction bond.

During the Appellant's June 7, 1999, sentencing hearing, the lower court heard arguments by counsel, reviewed the Adult Probation Presentence Report, heard oral presentations on behalf of the Appellant, and heard victim impact statements regarding the effects of this crime upon the victims. Mr. Leon Copeland, the father of one of the victims, requested the lower court to sentence the Appellant to a term of incarceration longer than the fifteen years recommended by the State.

By order dated October 14, 1999, the lower court sentenced the Appellant to thirty years with credit for time served. The Appellant filed a motion for reconsideration on December 22, 1999. Mr. Copeland thereafter drafted a letter to the lower court, requesting denial of the Appellant's motion for reconsideration of the sentence.[3]

During the May 23, 2000, hearing on the motion for reconsideration, the lower court entertained arguments of counsel and oral statements on behalf of the Appellant and the State. Mr. Copeland again addressed the court, suggesting that the thirty-year sentence should not be reduced. By order dated June 6, 2000, the lower court denied the Appellant's motion to reconsider the sentence. The lower court thereafter appointed counsel to represent the Appellant on appeal and granted an extension of time to file an appeal with this Court.

## II. Standard of Review

■ This Court must review the thirty-year sentence imposed upon the Appellant. We have previously explained our standard of review in such cases as follows: "The Supreme Court of Appeals reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, State v. Lucas, 201 W.Va. 271, 496 S.E.2d 221 (1997).

## III. Discussion

The Appellant contends that the lower court violated Article III, Section 5 of the West Virginia Constitution by sentencing him to thirty years for aggravated robbery. He maintains that the thirty-year sentence is excessive and disproportionate to the character and degree of his offense, particularly in light of the fact that the crime resulted in no physical harm to the victims, the Appellant had no prior felony convictions,[4] the Appellant demonstrated no prior propensity toward acts of violence, the Appellant cooperated with authorities, and the evidence was conflicting regarding the degree of his involvement in the offense.[5]

■ In syllabus point eight of State v. Vance, 164 W.Va. 216, 262 S.E.2d 423 (1980), this Court explained:

---

2. The Appellant's bond had initially been set at $10,000.00 and had been reduced to $5,000.00 by the Magistrate. At the conclusion of the arraignment in the lower court, the State requested an increase in the bond amount. The lower court increased the bond to $25,000.00. The Appellant emphasizes the involvement of Mr. Leon Copeland, the father of one of the victims. Mr. Copeland, as well as other members of the victims' families, attended the arraignment and recommended an increase in the bond amount.

3. The lower court responded to Mr. Copeland's letter, and advised him that further correspon-

dence should be copied to defense counsel and the State.

4. The Appellant had only misdemeanor convictions for joyriding and possession of crack cocaine.

5. The Appellant contends that a difference in the recollection of the victims regarding which assailant actually held the gun during the robbery casts doubt upon the Appellant's degree of involvement in the robbery.

Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offense."

*Id.* at 217, 262 S.E.2d at 425. In syllabus point four of *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982), this Court noted that "[s]entences imposed by the trial court, if within statutory limits and if not based on some impermissible factor, are not subject to appellate review." *Id.* at 366, 287 S.E.2d at 505. Sentences imposed under statutes providing no upper limits may be contested based upon allegations of violation of the proportionality principles contained in Article III, Section 5 of the West Virginia Constitution. *State v. Rogers,* 167 W.Va. 358, 360, 280 S.E.2d 82, 84 (1981). In *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981), this Court explained: "While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence." *Id.* at 531, 276 S.E.2d at 211.

 In this case sub judice, the Appellant was sentenced pursuant to West Virginia Code § 61–2–12 (2000) (Repl.Vol.2000), providing, in pertinent part, as follows: "Any person who commits ... robbery by ... us[ing] the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years." We consequently examine the Appellant's disproportionality challenge under the two methods of evaluation consistently utilized by this Court and succinctly expressed in *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983). In *Cooper,* this Court articulated the twofold analysis appropriate for the disproportionality challenge, as follows:

The first [test] is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981):

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*Id.* at 272, 304 S.E.2d at 857.

### A. The Subjective Component

 As this Court emphasized in *State v. Ross,* 184 W.Va. 579, 402 S.E.2d 248 (1990), "the fact that lengthy sentences have been imposed..." for the crime of aggravated robbery has not been exclusively determinative of whether the sentence "shocks the conscience of the Court and society." *Id.* at 582, 402 S.E.2d at 251. In determining whether a sentence shocks the conscience, all circumstances surrounding the offense must be considered. *State v. Adams,* 211 W.Va. 231, 565 S.E.2d 353 (2002); *State v. King,* 205 W.Va. 422, 428, 518 S.E.2d 663, 669 (1999); *State v. Phillips,* 199 W.Va. 507, 513, 485 S.E.2d 676, 682 (1997).

 In the case sub judice, the Appellant robbed two minor female victims in a daytime robbery at gunpoint. One of the victims was forced to the ground on her hands and knees during a portion of the armed robbery. The present case differs substantially from the circumstances of *Cooper,* in which this Court reversed a forty-five year sentence for robbery. 172 W.Va. at 272, 304 S.E.2d at 857. The defendant in *Cooper* was nineteen years of age, and his criminal history included only a previous arrest for public intoxi-

cation. He and an accomplice had beaten and robbed the victim. In remanding the case to the trial court for re-sentencing, this Court emphasized the limited criminal history and observed that no weapon was involved in the crime. This Court found "Cooper's sentence ... so offensive to a system of justice in which proportionality is constitutionally required that we need not even reach the objective *Wanstreet* test." *Id.*

Unlike the situation in *Cooper* in which a forty-five year sentence was disapproved, the robbery in the present case involved the use of a deadly weapon. Further, the Appellant in this case possessed a somewhat more extensive criminal history, and the sentence being challenged is for only thirty years rather than forty-five years. Moreover, the Appellant in the present case, while expressing some degree of remorse for the robbery and accompanying emotional trauma to the victims, has not divulged information concerning the identity of his accomplice or the whereabouts of the gun used in the robbery.

Based upon the circumstances of the Appellant's crime, including the violent nature of the robbery and the use of a weapon, we find that the sentence imposed upon him does not shock the conscience of the court and society. It is indeed an "exquisite rarity" in Eighth Amendment jurisprudence where a sentence shocks the conscience and offends fundamental notions of human dignity. *People v. Weddle,* 1 Cal.App.4th 1190, 2 Cal.Rptr.2d 714, 718 (1991). We consequently proceed to the objective test.

### B. The Objective Component

#### 1. Nature of offense and the legislative purpose behind punishment imposed by statute

■ The first consideration of the objective test is the nature of the offense and the legislative purpose behind the punishment imposed by statute. This Court has previously commented that "[a]ggravated robbery in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved." *Ross,* 184 W.Va. at 582, 402 S.E.2d at 251. We similarly observed in *State v. Glover,* 177 W.Va. 650, 355 S.E.2d 631 (1987), that "[r]ob-

bery has always been regarded as a crime of the gravest character." *Id.* at 659, 355 S.E.2d at 640.

■ Accordingly, the West Virginia Legislature has conferred broad discretion to trial courts in sentencing individuals convicted of aggravated robbery or attempted aggravated robbery. "'The Legislature chose not to deprive trial courts of discretion to determine the appropriate specific number of years of punishment for armed robbery, beyond ten.'" *State v. Woods,* 194 W.Va. 250, 254, 460 S.E.2d 65, 69 (1995), *quoting State ex rel. Faircloth v. Catlett,* 165 W.Va. 179, 181, 267 S.E.2d 736, 737 (1980). This Court discussed this broad discretion in *State v. Mann,* 205 W.Va. 303, 518 S.E.2d 60 (1999), as follows:

> This Court has recognized that the Legislature, by not expressly fixing a maximum term, has impliedly authorized life imprisonment as the maximum penalty for aggravated robbery. *State v. Turley,* 177 W.Va. 69, 350 S.E.2d 696 (1986). The Legislature has chosen not to deprive trial courts of discretion to determine the appropriate determinate term for life or for a specific number of years above the statutory minimum as the sentence for aggravated robbery. This legislatively created statutory minimum/discretionary maximum sentencing scheme for aggravated robbery serves two purposes. First, it gives recognition to the seriousness of the offense by imposing a minimum sentence below which a trial court may not go. Second, the open-ended maximum sentencing discretion allows trial courts to consider the weight of aggravating and mitigating factors in each particular case.

*Id.* at 315–16, 518 S.E.2d at 72–73 (footnote omitted).

As examined above, the Appellant's offense in the present case involved the armed robbery of two young women exiting a downtown mall. The use of the deadly weapon infused a considerable risk of injury to the victims, and the manner in which the robbery was conducted, including forcing one victim to the ground at gunpoint and returning to steal the automobile keys, was particularly terrifying for the young victims. Even where victims have not been harmed during

armed robberies, this Court has considered the emotional damage suffered by the victim. *See State v. Spence*, 182 W.Va. 472, 482, 388 S.E.2d 498, 508 (1989). This Court has also repeatedly explained that even where no actual injury occurred, use of a deadly weapon creates "[t]he potential for bodily harm or loss of life. . . ." *State v. England*, 180 W.Va. 342, 356, 376 S.E.2d 548, 562 (1988).

### 2. Comparison to Other Jurisdictions

In surveying sentences imposed for comparable crimes in other jurisdictions, this Court has previously recognized that other jurisdictions condone severe penalties for the crime of aggravated robbery. In *Glover*, this Court cited numerous cases from other jurisdictions involving challenges to sentences for the crime of aggravated robbery. 177 W. Va. at 659, 355 S.E.2d at 640. *See State v. Boag*, 104 Ariz. 362, 453 P.2d 508 (1969) (en banc) (holding that seventy-five to ninety-nine years for robbery is not cruel and unusual punishment); *State v. Victorian*, 332 So.2d 220 (La.1976) (finding that forty-five years without possibility of parole is not excessive punishment for armed robbery, under statute authorizing between five and ninety-nine years without possibility of parole); *Garrett v. State*, 486 S.W.2d 272 (Mo.1972) (approving ninety-nine years for first degree robbery, with a prior felony).

In *Mann*, this Court again reviewed comparable crimes in other jurisdictions and concluded that Mr. Mann's sentence of thirty years for aggravated robbery was not inconsistent with punishments imposed for similar crimes in other jurisdictions. 205 W.Va. at 316, 518 S.E.2d at 73. *See also People v. Murph*, 185 Mich.App. 476, 463 N.W.2d 156 (1990) (affirming two forty-sixty sentences for armed robbery).

In a case quite similar to the present matter, the Missouri Court of Appeals upheld a sentence of life imprisonment for robbery in the first degree. *State v. Morris*, 661 S.W.2d 84 (Mo.App.1983). The defendant and an accomplice had robbed the victim while he was walking in a supermarket parking lot. The victim was forced to the pavement, and

the defendant held a gun to his side and confiscated his billfold. On appeal of the sentence of life imprisonment, the defendant claimed that his sentence violated the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the United States Constitution and Article 1, Section 21 of Missouri's Constitution. The Missouri Court of Appeals affirmed, explaining that armed robbery is a vicious crime and that the legislature had acknowledged the egregiousness of the crime by establishing a range of punishment for robbery in the first degree from "a term of years not less than ten years and not to exceed thirty years, or life imprisonment." *Id.* at 85, *quoting* Section 558.011.1(1) R.S.Mo.1978.

### 3. West Virginia Precedent

This Court has recurrently evaluated proportionality challenges to sentences arising from robbery convictions where a weapon was used during the commission of the offense. In *King*, this Court reviewed punishments for similar crimes in both West Virginia and other jurisdictions and upheld an eighty-four year sentence for aggravated robbery.[6] 205 W.Va. at 424, 518 S.E.2d at 665. The defendant had broken into the home of an elderly woman, threatened her and her family with a knife and a gun, then waved the gun and took at least one shot during a drive the defendant forced the woman's son-in-law to take. He also exposed the son-in-law to additional danger by refusing to surrender to police and using the victim as a shield. *Id.* at 428, 518 S.E.2d at 669.

In a factual scenario very similar to the present case, this Court in *Mann* upheld a thirty-year sentence for aggravated robbery where the defendant showed no remorse, threatened a clerk with a gun, and had a prior drug-related felony conviction and a conviction for assault. 205 W.Va. at 316, 518 S.E.2d at 73. The Court reasoned:

> Obviously, the store clerk was traumatized by the situation. In fact, the record indicates the store clerk changed jobs as a result of the robbery. The trial court indi-

---

**6.** The defendant in *King* received a sentence of life without mercy for the kidnapping conviction.

205 W.Va. at 424, 518 S.E.2d at 665.

cated best, during the sentencing hearing, the gravity of aggravated robbery: "Other than a murder, there is not much anything I can think of more serious than having a gun stuck in your face and being robbed." *Id.* at 315, 518 S.E.2d at 72.

Forty-five year sentences for each of two counts of aggravated robbery were upheld in *Phillips.* 199 W.Va. at 509, 485 S.E.2d at 678.[7] During the two robberies, the defendant had threatened employees with an air pistol which resembled a real gun. He had taken an eighteen-year-old female employee hostage and forced her to accompany him to the nearest interstate highway. In upholding the sentences, this Court observed that the lower court had rightfully considered the violent and dangerous nature of the crimes committed, as well as the pre-sentence report which included information concerning the defendant's juvenile larceny charge, a history of substance abuse, and a dishonorable discharge from the Navy. *Id.* at 513, 485 S.E.2d at 682.

In *Woods,* this Court upheld a determinate sentence of thirty-six years for aggravated robbery. 194 W.Va. at 251, 460 S.E.2d at 66. The defendant robbed a convenience store, using a gun. After the clerk gave the defendant money and other items out of the cash register, the defendant forcibly kissed her. *Id.*

Similarly, in *Ross,* this Court upheld a defendant's 100–year sentence for attempted aggravated robbery. 184 W.Va. at 580, 402 S.E.2d at 249. The defendant was also convicted of burglary and first degree sexual assault. The defendant had broken into the victim's apartment while the victim was not home. When she returned home, the defendant sexually assaulted her and demanded money. In upholding the defendant's sentence, this Court acknowledged that the defendant was young and did not have a lengthy felony conviction record. *Id.* at 582, 402 S.E.2d at 251.

This Court also upheld a defendant's sixty-year sentence for armed robbery of a conve-

nience store in *Spence.* 182 W.Va. at 475, 388 S.E.2d at 501. The defendant had held a large kitchen-type chopping knife to the store clerk's back and demanded the money from the cash register. Upon obtaining the money, the defendant commanded the store clerk to get down on the floor while he left. In affirming the defendant's sentence, this Court noted that the defendant had several prior convictions including one for armed robbery. *Id.* at 482, 388 S.E.2d at 508.

In *England,* this Court examined a defendant's life sentence for aggravated robbery. 180 W.Va. at 346, 376 S.E.2d at 552. The defendant had entered a gas station and demanded the station's money bag. When the clerk informed the defendant that the money had already been deposited that evening, the defendant shot at the highway in disgust. The clerk then provided a money bag containing approximately $230.00. The defendant then fired another shot into the booth inside the station and requested more money. Upon learning that there was no more money, the defendant fired a third shot into a telephone. Upon review, this Court concluded that the defendant's life sentence was not disproportionate, based upon the violent nature of the crime and the defendant's prior criminal record, including a conviction for grand larceny. *Id.* at 356, 376 S.E.2d at 562.

In *State v. Brown,* 177 W.Va. 633, 355 S.E.2d 614 (1987), this Court upheld a sixty-year sentence for aggravated robbery. The defendant had robbed a restaurant owner, using a knife, and had sexually abused the victim. The defendant was also convicted of first-degree sexual abuse for which he received a one-to-five-year consecutive sentence. In upholding the defendant's sixty-year sentence for aggravated robbery, this Court recognized the violent nature of the crime and the use of a weapon. The Court also observed that the defendant had not expressed remorse for his crimes. *Id.* at 642, 355 S.E.2d at 623.

In *State v. Buck,* 173 W.Va. 243, 314 S.E.2d 406 (1984), this Court reversed a sev-

---

7. The defendant in *Phillips* received a 140–year sentence, including 45 years for each of two counts of aggravated robbery and 50 years for kidnapping. 199 W.Va. at 509, 485 S.E.2d at 678.

enty-five year sentence for aggravated robbery where the defendant and a companion attacked and robbed a store owner. The defendant, age twenty-three, had a substantial juvenile record but no adult criminal record. Not only was the expression of remorse a factor in this Court's finding that Buck's sentence was disproportionate, but we also considered the sentencing disparity between the co-defendants. When his case was appealed to this Court after the lower court sentenced the defendant to a term of thirty years, this Court affirmed that sentence. *State v. Buck*, 178 W.Va. 505, 361 S.E.2d 470 (1987).

In *Cooper*, referenced above, this Court reversed a forty-five year sentence for robbery. 172 W.Va. at 274, 304 S.E.2d at 859. The defendant, age nineteen, and an accomplice had beaten and robbed the victim. In remanding the case to the trial court for re-sentencing, this Court observed that the defendant had only one prior arrest, which was for public intoxication. Additionally, no weapon was involved in the crime. *Id.* at 271, 304 S.E.2d at 855.

■ Having examined the nature of the offenses and the respective sentences imposed in the foregoing cases, we conclude that the Appellant's sentence of thirty years in the case sub judice is constitutionally proportionate to the character and degree of the offense for which he was convicted.

## C. Victim Impact Statements

■ Although the Appellant does not include any reference to victim impact statements in his assignment of error on appeal

and does not explicitly assert that the lower court was unduly influenced by the oral statements of Mr. Copeland, the Appellant does repeatedly reference Mr. Copeland's extensive involvement in presentations to the lower court. Upon review of the record, including the letters and oral comments of Mr. Copeland, we find no impropriety in the manner in which Mr. Copeland presented his concerns; nor do we find that the lower court was unduly influenced by Mr. Copeland in determining an appropriate sentence for the Appellant.[8]

The lower court was presented with extensive information and testimony from a wide variety of sources, some advocating leniency and some encouraging harsh punishment. Numerous letters from family friends implored the lower court to impose a mild sentence based upon the fact that the Appellant was raised in a Christian home, was a mannerly young man, and had lost his mother at a young age.[9] The lower court also reviewed the adult probation report and reviewed statements from the victims and the parents of both victims.

The inclusion of victim impact statements in sentencing hearings is well-established and is not being directly challenged by the Appellant. In light of the Appellant's implication that the lower court was in some manner inordinately persuaded by the victim impact statements and the presentation of Mr. Copeland in this case, however, we reemphasize the requirements of West Virginia Code § 61–11A–3 (1994) (Repl.Vol.2000) regarding probation reports and victim impact state-

---

8. The lower court explained as follows during the June 7, 1999, hearing:

> In imposing the sentence, I've been here with you today and have heard the state and their recommendations and the victim's impact as represented by the fathers of the two girls that were held up; heard the defense counsel's statement and the defendant's statement, as well as the defendant's family; reviewed the pre-sentence report, the recommendations that have been made.

The lower court further commented upon the Appellant's "deplorable" academic record, his first misdemeanor conviction for joyriding, a second joyriding conviction, a crack cocaine possession conviction, and the circumstances of the

aggravated robbery. The lower court explained that it was required to determine the appropriate sentence for "aggravated robbery in broad daylight, in Town Center, in the heart of Charleston, with two high school girls." The lower court also referred to the "truth in sentencing aspects" of the sentence, "which are how much time will he actually spend in prison...."

9. A heartfelt letter from the Appellant's father urged leniency, suggesting that the Appellant's Christian background and upbringing would play a role somewhere in his life. The father's letter apologized to the victims, explaining that his son's crime was wrong and against the father's principles.

ments.[10] West Virginia Code § 61–11A–3(c) concisely provides that "[t]he victim impact statement shall be considered by the court as a factor in determining the appropriate sentence."

In *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984), this Court explained that "a victim or the immediate family of a victim or a person having particular knowledge relevant to the case" may petition a court "to consider facts that may have a bearing on the court's decision to accept or reject a plea bargain or to set a particular sentence." *Id.* at 676 n. 32, 319 S.E.2d at 801 n. 32. We held that "[t]his right is basically provided in felony cases under W.Va.Code, 61–11A–2 (1984)...." *Id.* West Virginia Code § 61–11A–2 (1984) (Repl.Vol.2000) provides that a court "shall permit" the victim to make an oral statement for the record prior to the imposition of sentence. W. Va.Code 61–11A–2(b). The term "victim" is defined by that statute as "a person who is a victim of a felony, the fiduciary of a deceased victim's estate or a member of a deceased victim's

immediate family." W. Va.Code 61–11A–2(a).

The utilization of victim impact statements was addressed by the Maryland Supreme Court in *Ball v. State*, 347 Md. 156, 699 A.2d 1170 (1997), *cert denied Ball v. Maryland*, 522 U.S. 1082, 118 S.Ct. 866, 139 L.Ed.2d 763 (1998). The court examined Maryland Code, Art. 27, § 780(a), providing the opportunity for victims and victims' families to address the sentencing judge. The court explained:

> In light of this provision and other legislation aimed at remedying what has been perceived as the justice system's neglect of crime victims, "trial judges *must* give appropriate consideration to the impact of crime upon the victims"; "[a]n important step towards accomplishing that task is to accept victim impact testimony wherever possible."

*Id.* at 1188, *quoting Cianos v. State*, 338 Md. 406, 659 A.2d 291, 295 (1995) (emphasis in original).[11]

---

**10.** West Virginia Code § 61–11A–3(a) provides as follows: "In every case in which a presentence report is ordered by the court, such presentence report shall contain a victim impact statement unless the court orders otherwise, if the defendant, in committing a felony or misdemeanor, caused physical, psychological or economic injury or death of the victim." The statement is statutorily required to include "a description of the nature and extent of any physical or psychological injury suffered by the victim as a result of the offense...." *See* W. Va.Code § 61–11A–3(b).

**11.** A pivotal distinction exists between utilization of victim impact statements in capital and noncapital cases. In capital cases, based upon the gravity of the death penalty situation, the United States Supreme Court has expressed particular limitations upon the utilization of victim impact evidence. In *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the Supreme Court held that introduction of a victim impact statement during the sentencing phase of a capital murder trial violated the Eighth Amendment. The *Booth* Court prominently stated the distinction between capital and non-capital cases, explaining as follows:

> We note, however, that our decision today is guided by the fact death is a "punishment different from all other sanctions," *see Woodson v. North Carolina*, 428 U.S. 280, 303–304, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (plurality opinion of Stewart, POWELL, and STEVENS, JJ.), and that therefore the considerations that inform the sentencing decision may be differ-

ent from those that might be relevant to other liability or punishment determinations. At least 36 States permit the use of victim impact statements in some contexts, reflecting a legislative judgment that the effect of the crime on victims should have a place in the criminal justice system. See National Organization for Victim Assistance, Victim Rights and Services: A Legislative Directory 32–33 (1985) (chart); McLeod, Victim Participation at Sentencing, 22 Crim.L.Bull. 501, 507, and n. 22 (1986). Congress also has provided for victim participation in federal criminal cases. See Fed. Rule Crim.Proc. 32(c)(2)(C). We imply no opinion as to the use of these statements in noncapital cases.

482 U.S. at 509 n. 12, 107 S.Ct. 2529.

The *Booth* Court specified that two types of information contained in such a statement were objectionable: (1) "a description of the emotional trauma suffered by the family and the personal characteristics of the victims," and (2) "the family members' opinions and characterizations of the crimes and the defendant." *Id.* at 502–03, 107 S.Ct. 2529 In *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), however, the United States Supreme Court overruled the holding in *Booth* regarding the first category and declined to consider the second category which included family members' opinions regarding the crime, the defendant, or the proper sentence since that was not an issue in the case. *Id.* at 830 n. 2, 111 S.Ct. 2597. The Court in *Payne* held that argument relating to the victim and the impact of the victim's death on

In the matter presently before this Court, we conclude that the lower court properly focused upon the sentencing criteria and the nature of the Appellant's crime, and we further conclude that excessive emphasis was not placed upon the victim impact statements or the sentencing recommendations of the victims or their families.

Based upon the foregoing analysis, we affirm the sentencing order of the Circuit Court of Kanawha County.

Affirmed.

ALBRIGHT, Justice, dissenting.

(Filed June 11, 2002)

Based upon the unusual circumstances of this case, I disagree with the majority's decision to affirm the imposition of a thirty-year sentence. The circuit court was presented with the State's recommendation of a fifteen-year sentence. Upon hearing the vigorous arguments of the victims' families, however, the court doubled the recommended sentence and determined that a thirty-year sentence was appropriate for this young man with no prior felony convictions.

The lower court's decision to double the recommended sentence appears to have been based entirely upon the statements of the victims' families, requesting more stringent punishment. While a determination of the proper length of sentence was technically within the trial court's discretion, I am shocked by the degree to which the trial judge increased the sentence. It was wholly appropriate for the trial judge to evaluate the victim impact statements and consider the requests of the victims' families, but there was also an obligation to impose a sentence appropriate to the crime committed. Doubling the recommended sentence seems excessive in this situation. In light of this extraordinary circumstance, I would conclude that thirty years constitutes an excessive sentence and that the lower court abused its discretion.

I therefore respectfully dissent.

I am authorized to state that Justice STARCHER joins in this dissent.

MAYNARD, Justice, concurring.

(Filed July 2, 2002)

I concur in the majority opinion's analysis and decision. The separate opinion seeks to remove the sentencing discretion afforded the trial court in this armed robbery case and substitute the judgment of this Court. With this I do not agree.

The trial judge was in a position far superior to this Court. Our review is limited to sheets of paper that have words written on them. The trial judge had the benefit of observing the demeanor of the defendant including his remorse or lack thereof, his attitude, and his overall credibility. The trial judge also had the benefit of observing personally the impact this crime had on the victims and their families. The trial judge properly considered the fact that the defendant refused to name his accomplice or tell officials where to recover the gun used in the crime. The sentence is within statutory limits and is not impermissible. The sentence is proportionate to the character and degree of the crime. The circuit court was not in any way bound by the State's recommendation of a fifteen-year sentence.

I believe the separate opinion overreaches by suggesting that this Court should usurp the authority of the circuit court and impose a lesser sentence. Accordingly, I concur.

---

the victim's family is admissible for jury consideration during the sentencing phase of a capital murder trial. *Id.* at 808, 111 S.Ct. 2597.