582 S.E.2d 737

STATE ex rel. Ricco BALLARD,
Petitioner Below, Appellant,

v.

Howard PAINTER, Warden, Mount Olive Correctional Complex, Defendant Below, Appellee.

No. 30648.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2003.

Decided Feb. 27, 2003.

James Randall Rhodes, Martinsburg, for Appellant.

Pamela Jean Games–Neely, Berkeley County Prosecuting Attorney, Christopher C. Quasebarth, Assistant Prosecuting Attorney, Martinsburg, for Appellee.

PER CURIAM.

Ricco J. Ballard, appellant/petitioner below (hereinafter referred to as "Mr. Ballard") appeals from an order by the Circuit Court of Berkeley County dismissing Mr. Ballard's petition for habeas corpus.[1] Mr. Ballard has assigned error to six rulings by the circuit court in dismissing the petition. Mr. Ballard contends that the circuit court committed reversible error in: (1) finding the sentence imposed by the trial judge was not excessive; (2) finding the State did not improperly use a peremptory strike to exclude the only African–American on the jury panel; (3) finding trial counsel did not commit ineffective assistance of counsel by failing to ask for jury instructions on three lesser included offenses; (4) finding trial counsel did not commit ineffective assistance of counsel by failing to subpoena a witness; (5) finding the trial judge did not err in giving an accomplice jury instruction; and (6) finding the trial judge did not have a legal duty to *sua sponte* give lesser included offense instructions. After a careful review of the record and listening to the oral arguments of the parties, we reverse the circuit court's order denying Mr. Ballard's requested writ of habeas corpus, grant the writ, and remand the case for a new trial.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On January 13, 1997, a convenience store in Martinsburg, West Virginia, was robbed by two women and a man. The women, identified as Yolanda Williams and Janelle Kendricks, and Richard Pannell were allegedly driven to the convenience store in a rented car by Mr. Ballard. Mr. Ballard did not enter the store. He remained outside as a lookout. While inside the store, Ms. Williams brandished a gun and demanded money from the store clerk.[2] After the mon-

---

1. The petition for habeas relief was filed against Howard Painter, Warden, Mount Olive Correctional Complex, appellee/respondent below.

2. Only the store clerk was present at the time of the robbery.

ey was handed over, the store clerk was struck in the head, and the assailants fled.[3]

Several days after the robbery, Mr. Ballard was arrested and charged with armed robbery. Mr. Ballard was indicted on a charge of aiding and abetting armed robbery. Indictments for armed robbery were also returned against Ms. Williams, Ms. Kendricks and Mr. Pannell.

Prior to Mr. Ballard's trial, Ms. Williams and Mr. Pannell entered guilty pleas to lesser charges in exchange for testifying on behalf of the State.[4] Mr. Ballard was tried in August of 1997. A jury returned a verdict convicting him of aiding and abetting armed robbery.[5] The trial judge subsequently sentenced Mr. Ballard to 50 years in prison. Mr. Ballard filed a petition for appeal, challenging only the length of his sentence. The appeal, was denied by this Court on September 9, 1998. After the petition for appeal was denied, Mr. Ballard filed a habeas corpus petition alleging numerous grounds of error.[6] The circuit court eventually granted the State's motion to dismiss the petition and denied relief.[7] From this rule, the appellant appeals.

## II.

## STANDARD OF REVIEW

In this appeal, the circuit court addressed issues involving ineffective assistance of counsel and other alleged trial errors. In Syllabus point 1 of *State ex rel. Vernatter v. Warden*, 207 W.Va. 11, 528 S.E.2d 207 (1999), we set out the standard of review for claims of ineffective assistance of counsel as follows:

"An ineffective assistance of counsel claim presents a mixed question of law and fact; we review the circuit court's findings of historical fact for clear error and its legal conclusions *de novo*. This means that we review the ultimate legal claim of ineffective assistance of counsel *de novo* and the circuit court's findings of underlying predicate facts more deferentially."

(*Quoting State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 320, 465 S.E.2d 416, 422 (1995)). *See also* Syl. pt. 1, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975) ("Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong."). We further held in Syllabus point 5 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), that:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):(1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

In addressing the ineffective assistance claims raised in this case, we follow the standard announced in Syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

3. When the three robbers left the store, they caught a ride with a third party, and Mr. Ballard followed them in his car. At some point, the three robbers got out of the third party's car and got into Mr. Ballard's vehicle.·

4. Ms. Williams pled guilty to non-aggravated robbery and was sentenced to 5–18 years in prison. Mr. Pannell pled guilty to conspiracy to commit aggravated robbery and received a sentence of 1–5 years. Mr. Pannell's sentence was suspended, and he was placed on probation. Mr. Pannell's probation was subsequently revoked for a violation, and he was imprisoned.

5. In a separate trial, Ms. Kendricks was acquitted by a jury.

6. After the petition was filed, counsel was appointed to represent Mr. Ballard and an amended habeas petition was thereafter filed.

7. The decision was made on the record without an omnibus hearing. *See* Syl. pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973) ("A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.").

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Within these principles of law, we address the issues raised in this appeal.

## III.

## DISCUSSION

### A. Determining Whether Sentence Was Disproportionate

Mr. Ballard complains that his sentence of 50 years' imprisonment was excessive and disproportionate. In the decision of *State v. Cooper*, 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983), this Court outlined the two tests used to determine whether a sentence is so disproportionate to a crime that it violates our constitution:

> The first [test] is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test[.]

We will examine the *Cooper* factors separately.

**1. Subjective test.** Under the subjective test, we must determine whether the sentence imposed on Mr. Ballard shocks the conscience. "In making the determination of whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense." *State v. Adams*, 211 W.Va. 231, 233, 565 S.E.2d 353, 355 (2002) (per curiam). *Accord State v. Tyler*, 211 W.Va. 246, 250, 565 S.E.2d 368, 372 (2002) (per curiam).

At the time of sentencing, the trial court appropriately took into consideration Mr. Ballard's prior criminal history. That criminal history included a pending possession of cocaine charge by the state of Maryland; a 1996 arrest and conviction for receiving stolen property; and a 1997 conviction for burglary, for which Mr. Ballard was sentenced to 1–10 years in prison. Although it does not appear that Mr. Ballard's prior criminal record involved crimes of violence, that record does show a disregard for the law. Further, in the instant case, a weapon was used by an accomplice, and an innocent victim was struck in the head. Finally, as the State has pointed out, Mr. Ballard failed to display any remorse for the crime after a jury convicted him.

We have little hesitancy in finding that, based upon the circumstances of the crime, including the violent nature of the robbery and the use of a weapon, the sentence imposed upon Mr. Ballard does not shock the conscience of the court or society.

**2. Objective test.** The guidelines for the objective test were set out in Syllabus point 5 of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981), as follows:

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*(A) Nature of offense and the legislative purpose behind punishment imposed by statute.* Our first consideration under the objective test requires an examination of the nature of the offense and the legislative purpose behind the punishment imposed by statute. We have previously indicated that aggravated "[r]obbery has always been regarded as a crime of the gravest character." *State v. Glover*, 177 W.Va. 650, 659, 355 S.E.2d 631, 640 (1987). This is because aggravated "robbery involves a high potentiality for violence and injury to the victim involved." *State v. Ross*, 184 W.Va. 579, 582, 402 S.E.2d 248, 251 (1990) (per curiam). As a result of the pernicious nature of the crime of aggravated robbery, the Legislature has

granted trial courts discretion in imposing a maximum determinative sentence beyond ten years. This Court discussed this broad sentencing discretion in *State v. Mann*, 205 W.Va. 303, 315–16, 518 S.E.2d 60, 72–73 (1999) (per curiam) (internal citations and footnote omitted), as follows:

This Court has recognized that the Legislature, by not expressly fixing a maximum term, has impliedly authorized life imprisonment as the maximum penalty for aggravated robbery. The Legislature has chosen not to deprive trial courts of discretion to determine the appropriate determinate term for life or for a specific number of years above the statutory minimum as the sentence for aggravated robbery. This legislatively created statutory minimum/discretionary maximum sentencing scheme for aggravated robbery serves two purposes. First, it gives recognition to the seriousness of the offense by imposing a minimum sentence below which a trial court may not go. Second, the open-ended maximum sentencing discretion allows trial courts to consider the weight of aggravating and mitigating factors in each particular case.

In this proceeding, Mr. Ballard has conceded that the sentence imposed was within the range allowed by statute. Moreover, he does not challenge the constitutionality of the statute.

*(B) Comparing sentences.* Mr. Ballard concedes that the sentence imposed is not disproportionate with sentences imposed in other jurisdictions and in this State. *See, e.g.,* *State v. Boag*, 104 Ariz. 362, 453 P.2d 508 (1969) (75 to 99 year sentence); *People v. Isitt*, 55 Cal.App.3d 23, 127 Cal.Rptr. 279 (1976) (life sentence); *State v. Hoskins*, 522 So.2d 1235 (La.Ct.App.1988) (99 year sentence); *People v. Murph*, 185 Mich.App. 476, 463 N.W.2d 156 (1990) (two 40 to 60 year sentences); *State v. Morris*, 661 S.W.2d 84 (Mo.Ct.App.1983) (life sentence); *Robinson v. State*, 743 P.2d 1088 (Okla.Crim.App.1987)

(100 year sentence). *See also* *State v. Adams*, 211 W.Va. 231, 565 S.E.2d 353 (2002) (per curiam) (90 year sentence); *State v. Williams*, 205 W.Va. 552, 519 S.E.2d 835 (1999) (per curiam) (50 year sentence); *State v. Ross*, 184 W.Va. 579, 402 S.E.2d 248 (1990) (per curiam) (100 year sentence); *State v. Spence*, 182 W.Va. 472, 388 S.E.2d 498 (1989) (60 year sentence); *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988) (life sentence); *State v. Glover*, 177 W.Va. 650, 355 S.E.2d 631 (1987) (75 year sentence). Instead, Mr. Ballard contends that his sentence "is disproportionate when viewed in light of the codefendants' sentences."

■ We have long held "that disparate sentences of co-defendants that are similarly situated may be considered in evaluating whether a sentence is so grossly disproportionate to an offense that it violates our constitution." *State v. Cooper*, 172 W.Va. at 271, 304 S.E.2d at 856. This Court set out the guidelines for addressing the issue of disparity in sentencing between codefendants in Syllabus point 2 of *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984), as follows:

Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

In the instant proceeding, the only fully developed issues presented for disparate sentencing analysis[8] concern the respective involvement in the crime by each codefendant and the display of remorsefulness.[9] The issue that concerns this Court is the role Mr. Ballard played in this crime versus that of his co-defendants.

---

**8.** Although it appears that at least one co-defendant had a prior record, neither party briefed this issue. Likewise, the parties failed to address the issue of rehabilitative potential of any of the defendants.

**9.** As to the issue of remorsefulness, we have previously indicated that Mr. Ballard did not display remorse after his conviction. The codefendants who were convicted did display remorse.

While Mr. Ballard drove the car that took his co-defendants to the robbery site, he did not enter the store, nor was he actually armed with a weapon. One of the alleged co-defendants was acquitted. The other two co-defendants, Ms. Williams and Mr. Pannell, pled guilty to lesser charges. Ms. Williams, who was the only armed defendant, was sentenced to 5–18 years in prison. Mr. Pannell received a sentence of 1–5 years, which was suspended, and he was placed on probation. On the other hand, Mr. Ballard's sentence, for aiding and abetting the crime, netted him 50 years in prison. We are concerned with the disparate sentencing in this case in light of Mr. Ballard's actual role in the crime. However, because we have determined that Mr. Ballard is entitled to a new trial on the issue that follows, we need not reverse and remand for re-sentencing.

### B.   Improper Exclusion of Juror from Panel

■ The next issue raised by Mr. Ballard is that the State violated his right to equal protection when it struck the only African–American prospective juror from the jury panel. This Court held in Syllabus point 1 of *State v. Marrs,* 180 W.Va. 693, 379 S.E.2d 497 (1989), that "[i]t is a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution for a member of a cognizable racial group to be tried on criminal charges by a jury from which members of his race have been purposely excluded." In Syllabus points 2 and 3 of *Marrs* we set out the test for analyzing a claim of racial discrimination in striking a prospective juror as follows:

> To establish a prima facie case for a violation of equal protection due to racial discrimination in the use of peremptory jury challenges by the State, "the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'

> Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." [Citations omitted.] *Batson v. Kentucky,* 476 U.S. 79 at 96, 106 S.Ct. 1712 at 1722, 90 L.Ed.2d 69 (1986).

Syl. pt. 2, *Marrs,* 180 W.Va. 693, 379 S.E.2d 497.

> The State may defeat a defendant's prima facie case of a violation of equal protection due to racial discrimination in selection of a jury by providing non-racial, credible reasons for using its peremptory challenges to strike members of the defendant's race from the jury.

Syl. pt. 3, *id.* Finally, we have indicated that "[i]f the State tenders such an explanation, the trial court must decide whether the defendant has proved purposeful racial discrimination, i.e., whether the stated reason was a pretext." *State v. Rahman,* 199 W.Va. 144, 155, 483 S.E.2d 273, 284 (1996).

Applying these principles to the facts of this case, we have little hesitancy in finding the State improperly exercised a peremptory strike to remove the sole African–American prospective juror from the jury panel. It is not disputed that Mr. Ballard is an African–American and that the prospective juror that was peremptorily struck by the State was an African–American. Under these circumstances, a prima facie case of purposeful discrimination was shown. The burden shifted to the State to proffer a credible non-discriminatory reason for striking the juror.

■ The State initially argued that it struck the juror because he worked at the same company as Mr. Ballard's father. Subsequent voir dire of the juror revealed that he did not work at the same company as Mr. Ballard's father and that he did not know any member of Mr. Ballard's family. After the State's initial reason fell apart, the State argued that it struck the juror because the juror worked the nightshift and would be unable to stay awake during the trial. The State learned of the juror's nightshift work during general voir dire of all prospective jurors. Even though the juror had previous-

ly informed the trial court that he would not have a problem staying awake during the trial, the trial court found that this was a credible non-discriminatory reason for striking the juror. The trial court further concluded that Mr. Ballard failed to show a pretext.

Mr. Ballard now contends that the reason proffered by the State was pretextual. We agree. However, we need not reach the issue of pretext because the initial reason given was not credible. The record is clear. The State initially contended that the juror worked with Mr. Ballard's father. This reason, had it been true, would have been a credible basis for striking the juror. When this reason evaporated, the State seized upon an issue mentioned earlier during questioning. That is, the juror had previously informed the trial court that he worked the nightshift, but that he was able to perform the tasks required of a juror.

The State again re-asserted the nightshift issue after its initial reason for seeking to strike the juror was shown to be meritless. By simply re-asserting the nightshift issue, the State failed to prove that the juror would have difficulty staying awake during the trial. The State was only able to show that the juror worked the nightshift. This showing, without more, was simply not a facially credible basis for striking the juror in the face of a racial discrimination challenge. As a result of the State being unable to provide a credible basis for striking the juror, the trial court should have prevented the State from using a peremptory strike to remove the juror. This error requires the sentence and conviction be set aside and a new trial granted.[10]

## IV.

### CONCLUSION

We find that Mr. Ballard's sentence of 50 years' imprisonment was disparate to those of his co-defendants, and that the State unlawfully struck an African–American prospective juror. Therefore, we reverse the circuit court's order denying Mr. Ballard's

requested writ of habeas corpus, grant the writ, and remand the case for a new trial.

Reversed and Remanded.

Justice STARCHER concurs.

---

**10.** Because we are granting Mr. Ballard a new trial, we need not address the remaining assign-

ments of error.