**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

FILED

April 19, 2019

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0205** (Mineral County 16-F-102, 17-M-21, 17-M-22, and 17-M-23)

**Travis W.,**
**Defendant Below, Petitioner**


**MEMORANDUM DECISION**


Petitioner Travis W., by counsel Jeremy B. Cooper and James E. Hawkins, Jr., appeals the Circuit Court of Mineral County's February 22, 2018, sentencing order entered following his convictions for unlawful restraint, domestic battery, unlawful assault, and fraudulent use of an access device. Respondent State of West Virginia, by counsel Elizabeth Grant, filed a response and supplemental appendix. Petitioner filed a reply. On appeal, petitioner asserts that the circuit court erred at sentencing in permitting certain individuals to testify and considering "untruthful" statements contained within victim impact statements, erred in presiding over the matter despite having a conflict of interest, and committed cumulative error.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 23, 2016, petitioner went to his former girlfriend's (the "victim") home where he verbally abused, choked, and sexually assaulted her. While in the home, petitioner forced the victim into their infant child's room where he beat her and would not let her tend to their crying child. Petitioner later asked the victim how much money she had. Apparently dissatisfied with the amount stated in response, petitioner threatened to kill her. The victim then transferred funds for petitioner's use from an account she shares with her parents. While petitioner was monitoring the transfer, the victim attempted to escape with their infant child; however, petitioner grabbed her, jerked her around, and prevented her escape. Petitioner then forced the victim and their child back to a bedroom, instructed the victim not to call the police, and left the residence, taking the victim's phone, debit card, and laptop.

After petitioner left the victim's home, she sought help from her neighbors, including Corey Shoemaker and Meredith Haines. The police were ultimately called, and the investigating officer reported that the victim's face and lips were "extremely swollen," she was "obviously the

victim of possible serious head-trauma," her speech was difficult to understand "due to her head injuries," and she "appeared to be confused, possibly due to a concussion."

Petitioner was indicted on September 6, 2016, for one count of burglary, one count of malicious wounding, one count of first-degree sexual assault, one count of first-degree robbery, two counts of kidnapping, one count of fraudulent use of an access device, and one count of petit larceny. Petitioner's case was initially presided over by the Honorable Lynn A. Nelson, but petitioner successfully moved for his disqualification. Judge Nelson acknowledged that he "attended functions both professionally and privately" with the victim's mother, who is a local attorney, and "watched [the victim] grow up." Accordingly, by order dated January 19, 2017, this Court found sufficient justification "to warrant disqualification to avoid even an appearance of impropriety" and reassigned the case to the Honorable James W. Courrier Jr. Petitioner also sought Judge Courrier's disqualification; however, this Court denied that motion on February 21, 2017.

On December 20, 2017, the parties entered into a global plea agreement that disposed of the indictment in this matter as well as a case in magistrate court involving several misdemeanors. Petitioner agreed to plead guilty to one count of domestic battery, a pending misdemeanor; one count of unlawful restraint, a lesser-included offense of kidnapping, as charged in the indictment; one count of fraudulent use of an access device, as charged in the indictment; and one count of unlawful assault, a lesser-included offense of malicious assault, as charged in the indictment. Petitioner also consented to the filing of a recidivist information in which he would stipulate to being previously convicted of a felony, resulting in the doubling of the minimum term of the indeterminate statutory penalty for unlawful assault. The State agreed to dismiss all remaining counts of the indictment and all remaining misdemeanors contained in the magistrate court matter. The parties jointly requested that petitioner be sentenced to one year of incarceration for domestic battery, one year for unlawful restraint, not less than two nor more than five years for unlawful assault with recidivist treatment, and a determinate five-year term for fraudulent use of an access device, all of which were further requested to run concurrently. The parties acknowledged, however, that the plea agreement was not binding upon the circuit court. Finally, the parties "agree[d] to request a PSI and separate sentencing hearing, and agree[d] that the victim or a person on his or her behalf in this matter is entitled by statute to make a victim impact statement, either through the Probation Office, or in open court at the sentencing hearing." The circuit court accepted petitioner's plea.

On February 2, 2018, the parties appeared for sentencing. The State informed the court that Mr. Shoemaker and Ms. Haines, the neighbors who assisted the victim after her assault, wished to testify. Petitioner objected to the "fact witness" testimony on the ground that these individuals were not "victims" as defined by the Victim Protection Act of 1984 (the "Act")[1], but the court permitted their testimony. Mr. Shoemaker testified that he saw the victim immediately after she was attacked, described her injuries, and stated that because the victim "was not shown one shred of leniency that night[,] I would hope that justice treats [petitioner] the same way today." Ms. Haines likewise testified to the victim's injuries on the night of the attack, and the victim's parents also testified at sentencing.

---

[1]The Act is codified at West Virginia Code § 61-11A-1 to -8.

The circuit court sentenced petitioner to one year in the regional jail for his unlawful restraint conviction and one year in the regional jail for his domestic battery conviction. Petitioner was sentenced to the penitentiary for not less than two years nor more than five years for his unlawful assault conviction and to a determinate eight-year term for his fraudulent use of an access device conviction. All sentences were further ordered to run consecutively. Petitioner's sentence was memorialized in the court's sentencing order entered on February 22, 2018. It is from this order that petitioner appeals.

We review "sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010) (citation omitted)."

On appeal, petitioner argues that the circuit court erred in permitting Mr. Shoemaker and Ms. Haines to testify because the Act permits only victims to testify at sentencing. Moreover, petitioner claims that the "plea agreement specifically contemplated, and the [p]etitioner specifically bargained, that the State would call no witnesses." But the State called fact witnesses who "cast the [p]etitioner in a negative light" and argued for a harsher sentence than the parties agreed to request.

In enacting the Act, the legislature noted that "without the cooperation of victims and witnesses, the criminal justice system would cease to function, yet too often these individuals are either ignored by the criminal justice system or simply used as tools to identify and punish offenders." W. Va. Code § 61-11A-1(a). Further, "all too often the victim of a serious crime is forced to suffer physical, psychological or financial hardship first as a result of the criminal act and then as a result of contact with a criminal justice system not totally responsive to the needs of such victims." *Id.* Thus, one purpose of the Act is "to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process." *Id.* § 61-11A-1(b).

In effectuating this purpose, the Act provides that

[p]rior to the imposition of sentence upon a defendant who has been found guilty of a felony, . . . or has pleaded guilty or nolo contendere to a felony, . . . the court shall permit the victim of the crime to appear before the court to make an oral statement for the record if the victim notifies the court of his or her desire to make such a statement after receiving notification provided in subsection (c) of this section.

*Id.* § 61-11A-2(b). "Victim," as used in the Act, "means a person who is a victim of a felony." *Id.* § 61-11A-2(a).

Although the Act clearly provides that victims be afforded the opportunity to provide a statement, we find no language in it that would preclude the circuit court from admitting additional testimony from non-victims. In *State v. Tyler*, at the defendant's sentencing following his aggravated robbery conviction, one of the victim's fathers, Leon Copeland, testified. 211 W. Va. 246, 249, 565 S.E.2d 368, 371 (2002). Although the defendant had entered into a plea agreement with the State under which the State would recommend a fifteen-year sentence of incarceration,

3

Mr. Copeland urged the circuit court to sentence him to a longer term of incarceration. *Id.* The circuit court imposed a thirty-year sentence. *Id.* We found "no impropriety in the manner in which Mr. Copeland presented his concerns" to the circuit court, and we found that the circuit court was not "unduly influenced by Mr. Copeland in determining an appropriate sentence." *Id.* at 254, 565 S.E.2d at 376. In reaching this conclusion, we cited the Act and explained that "[t]he inclusion of victim impact statements in sentencing hearings is well-established." *Id.* at 254, 565 S.E.2d at 376.

Additionally, in *Myers v. Frazier*, we noted that "a victim or the immediate family of a victim or a person having particular knowledge relevant to the case [may] petition[] the circuit court to consider facts that may have a bearing on the court's decision to accept or reject a plea bargain or to set a particular sentence." 173 W. Va. 658, 676 n.32, 319 S.E.2d 782, 801 n.32 (1984). We found that "[t]his right is basically provided in felony cases under [the Act]." *Id.* Accordingly, petitioner has failed to demonstrate that the Act's provision requiring a circuit court to consider a victim's impact statement imposes any restrictions upon a sentencing court beyond its aim of "remedying what has been perceived as the justice system's neglect of crime victims." *Tyler*, 211 W. Va. at 255, 565 S.E.2d at 377 (quoting *Ball v. State*, 699 A.2d 1170 (Md. 1997)).

We likewise find no provision in petitioner's plea agreement that renders the circuit court's admission of this testimony erroneous. It states that the parties agree to request a "separate sentencing hearing" and that "the victim or a person on his or her behalf in this matter" is entitled by the Act to provide a victim impact statement. The agreement contains no explicit exclusion or limitation relative to witness testimony. The parties requested a separate sentencing hearing, and the victim and others on her behalf testified. Moreover, our conclusions in *Tyler* demonstrate that simply because a witness advocates for a lengthier sentence than that requested by the parties, his or her testimony is not rendered improper. *See id.* at 254, 565 S.E.2d at 376. Accordingly, we find no merit to petitioner's first assignment of error.

In petitioner's second assignment of error, he claims that the circuit court erred in sentencing him based upon "untruthful" statements contained within the victim impact statements. Petitioner argues that before his conviction, he and the victim were "engaged in an ongoing long-distance romantic relationship," and the victim sent him various pictures and videos of her, some of which were romantic in nature, and of their child. Petitioner claims that these photographs and videos paint "a very different picture" of his relationship with the victim than that testified to by the victim and her mother, who reported that petitioner "threatened [the victim] constantly."

We find that these communications do not disprove the characterizations of the victim's relationship with petitioner offered by the victim and her mother. Some of the communications occurred months before the attack and, in any event, do not prove that petitioner did not also harass and abuse the victim.

Additionally, at the sentencing hearing, petitioner's counsel alerted the circuit court to "certain things that are in the record of this case right now that tend to contradict statements in the written victim impact report as well as statements made on behalf of [the victim] today," including "chat logs between the parties concerning communications they had for a period of time." The court said, "All noted, so I'll take it into consideration." Because the communications do not negate representations of the nature of the relationship between petitioner and the victim, and because the

4

court nevertheless considered them at sentencing, petitioner has not shown that he was sentenced on the basis of inaccurate information. *See State v. Craft*, 200 W. Va. 496, 499, 490 S.E.2d 315, 318 (1997) ("A defendant has a due process right to be sentenced on the basis of accurate information.").

Third, petitioner claims that the victim's mother regularly appears before Judge Courrier, thereby presenting a conflict of interest that should have resulted in his disqualification. Petitioner acknowledges that he waived any pretrial defects by entering into a plea agreement, but he urges this Court to change existing law.

Petitioner is correct in noting that "by entering a plea of guilty [a defendant] waives all pre-trial defects with regard to his arrest, the gathering of evidence, prior confessions, etc., and further, . . . waives all non-jurisdictional defects in the criminal proceeding." *Call v. McKenzie*, 159 W. Va. 191, 198, 220 S.E.2d 665, 671 (1975). On appeal, petitioner offers no evidence that was not previously presented to this Court in addressing his motion seeking Judge Courrier's disqualification, and he fails to present any evidence of actual bias or prejudice on Judge Courrier's part. In *In re K.M.*, No. 16-0109, 2016 WL 5900710 (W. Va. Oct. 11, 2016)(memorandum decision), the appellant argued that the presiding judge should have been disqualified. *Id.* at *3. We found no merit to the argument where the appellant presented "no evidence that the judge had any actual bias or prejudice against him," we had previously addressed the matter following the appellant's filing of a motion for disqualification, and the appellant offered no new evidence or argument that was not raised in the motion for disqualification. *Id.* These same facts warrant denial of relief here and provide no justification for this Court to reconsider our law relative to waiver of non-jurisdictional defects by a defendant's entry into a plea agreement.

Lastly, petitioner argues cumulative error in that "there are multiple assignments of error." Petitioner requests that we consider the assignments of error "in light of one another" and find prejudicial error given that his sentencing hearing "was flawed in a number of ways." We have found no error, however, and the cumulative error doctrine does not apply where no errors are found. *See State v. Knuckles*, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996). "Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." *Id.* Accordingly, we find no merit to this assignment of error.

For the foregoing reasons, we affirm the circuit court's February 22, 2018, sentencing order.

Affirmed.

**ISSUED:** April 19, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison